## Peters's Appeal.

1. Presumption of payment arises after twenty years, and cannot be rebutted but by clear evidence.   What is such evidence is a question of law for the Court.

2. In 1851 a widow married having a separate estate.   Shortly afterwards she paid thereout certain debts of her husband at his request.   She died in 1855, intestate.   In 1858 her husband, without first administering, collected a certain note due to her before marriage.   In 1881 the said husband also died, intestate.   In 1883, letters of administration were first granted upon the estate of the said wife, and claim was made by such administrator upon the personal estate of the said husband for allowance of said payments so made and received.   No demand was made by the wife during her lifetime upon her husband for this money:

  *Held,* that the said claims, being upwards of twenty-five years old, were presumed to be paid from lapse of time, and that the evidence in the case was insufficient to rebut the presumption.

April 15, 1884.   Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

APPEAL from the Orphans' Court of *Luzerne county:*   Of January Term, 1884, No. 385.

This was an appeal by Philip Peters from a decree of said court dismissing his exceptions to the report of audit and distribution in the matter of his account as administrator of the estate of his father John Peters, deceased.

At the audit Daniel Bloss administrator of the estate of Rebecca Peters, deceased, late wife of John Peters, claimed to be awarded the sums of $583.30, and $150, respectively with interest.   The auditing judge found as follows:—

The decedent, John Peters, died on the 4th day of June, 1881, intestate, leaving to survive him no widow, but two children, viz: Philip Peters and Violetta, intermarried with Wesley Betterley, both of full age.

The decedent was married three times, his second marriage being with Rebecca Fenstamacher, who died in spring of 1855, leaving to survive her a daughter, with John Peters, viz., Mary E. Peters, of whose estate the decedent was guardian. . . . . . That of the estate of Rebecca Peters, former wife of

decedent, Daniel Bloss is adminstrator. The fund for distribution arose from personal estate and amounts to $2,424.02.

The history of the claim for $583.30, presented by Daniel Bloss, administrator of Rebecca Peters, briefly stated is as follows:—On the 6th day of April, 1850, William Hess, father of Rebecca Fenstamacher, gave his note to his said daughter for $583.30 to cover interest in a certain farm of her husband, Fenstamacher, which said farm was held by William Hess as trustee for said Fenstamacher. The amount due on this note above stated was subsequently paid by William Hess in fall of the year 1851, to John Peters, this decedent, who continued to retain it up to the time of his death, and still remains unpaid. On examination of the records we find that letters of administration on the estate of Rebecca Peters, deceased, were not taken out until 22d March, 1883. This claim is allowed with interest.

As to the other claim for $150, by Daniel Bloss, administrator of Rebecca Peters.—From the evidence adduced we find that in the year 1851, G. W. Hess borrowed from Rebecca Peters the sum of $250, of which $100 was repaid to her in the year 1853, the balance, to wit, $150, was paid to John Peters, this decedent, in winter of 1857 and 1858, which has never been accounted for by him to the parties entitled thereto. In this case as in the one last preceding, the claim is allowed with interest.

Exceptions filed by Philip Peters to the report of the auditing judge were dismissed, in an opinion filed, and the distribution, as reported, was confirmed. The exceptant took this appeal assigning for error the allowance of said claims.

*Q. A. Gates* (*A. R. Brundage* with him), for the appellant.

*John T. Lenahan* and *John McGahren*, for the appellees.

Mr. Justice PAXSON delivered the opinion of the court, April 28, 1884.

Stale claims against dead men's estates should always be scrutinized. Especially so where the claim might have been brought against the decedent in his lifetime, but has been delayed until death has sealed his lips, and placed it beyond the power of his legal representatives to defend with a full knowledge of the facts.

The claims, the allowance of which forms the subject of the two assignments of error, belong to this class. One of them was allowed to sleep for over thirty years, and the other for about twenty-five years, before any one was called upon for payment.

The first claim was for the sum of $583.33, which it was alleged Mrs. Peters paid at the request of her husband, and on his account, in 1851. There was evidence that Mrs. Peters had this amount of money, and that she did pay Jacob Weiss and William Hess some money on account of notes they held against her husband. But as to the amount of the notes, or the amount Mrs. Peters paid at that time, there is not a word of testimony. It is true one witness speaks of an admission of the decedent that he received something like $600 from his wife; but the admission was coupled with the further statement that the money was given to him by his wife to enable him to keep their home. The admission, taken as a whole, does not strengthen the appellee's case. This leaves the claim wholly uncertain in amount. The learned court below fixed it at $583.30. I have looked in vain through the evidence for anything which would lead to this result, but conceding its correctness, we are left without any finding in the "report of audit and distribution" as to the nature of this transaction. Was it intended as a loan of money by the wife to the husband, or as a gift? Upon this vital question of fact we are not enlightened. That the learned Judge felt the strain of this part of the case is apparent from his opinion, in which he says: "Aside from the proof of actual payment of the husband's note by the wife, with her separate funds, the testimony consists almost entirely of statements made by this decedent to his neighbors since his wife's death, the substance of which leaves it in some doubt whether the first transaction was a gift, a loan, or an agreement that his heirs and his wife's heirs should share equally in their estates. The whole testimony, however, leaves no doubt of the decedent's indebtedness to the Fenstamacher heirs for something, and of his acknowledgment of the same down to a short period before his death."

But one witness speaks of any acknowledgment by decedent of an indebtedness to the Fenstamacher heirs. This was Henry Gruber, who had borrowed money of decedent. When the latter called upon Gruber about this money this is what occurred, according to Gruber's testimony: "He said by right he should not loan the money; that he had money: that by right he should take the money and pay off the Fenstamacher heirs; but then a couple of them had offended him, and he would put the money on interest." Of another interview the witness said: "About three years ago John Peters got me to take him down to Black Creek, and in conversation he said he was getting old, and said that if I could give him this money he would pay off the Fenstamacher heirs. I asked him how much he owed them; he said he did not know how

much.  He said he owed them, and that if he (Peters) had the money I owed he would try to settle with them."

This is indefinite.  No amount is fixed, nor are the Fenstamacher heirs designated.  It was fairly offset by the decedent's declarations, before referred to, that his wife gave him the money to help pay for the farm, and prevent its being taken from him.

We regard this evidence as insufficient to rebut the presumption of payment.  After a lapse of twenty years mortgages, judgments and all evidences of debt are presumed to be paid: Foulk v. Brown, 2 Watts, 209; and a recognizance in the Orphans' Court, Beale v. Kirk, 3 Norris, 415; and in less than twenty years, with circumstances, payment may be presumed: Hughes v. Hughes, 4 P. F. S., 240; Brigg's Appeal 12 Norris, 485.  After twenty years the law presumes that every debt is paid, no matter how solemn the instrument may be by which such debt is evidenced.  And such presumption stands until rebutted.  This presumption gathers strength as time advances and it is not too much to say that after thirty years, it ought not be overcome by anything but clear proof. We are of opinion that the evidence in this case is too vague and uncertain to rebut the presumption after this great lapse of time.  To the violence of the presumption must be added the unsatisfactory proof of the claim itself.  That it is not more distinct may perhaps be owing to its antiquity, but that very fact should admonish us that claims of this venerable character can never be admitted without great peril to the estates of the dead.  The fact must not be overlooked that there is not to be found in the case a trace of any claim by Mrs. Peters during her lifetime upon her husband for this money.  It comes now from her personal representives.  Mrs. Peters died in 1855.  Her husband the decedent, died in 1881. It was not until two years after his death, sometime in 1883 that letters of administration were taken out on the estate of Mrs Peters.  During all this time the decedent or his estate was solvent.

Whether the presumption of payment is sufficiently rebutted is a question of law for the court: Beale v. Kirk, supra. In holding, as we do in this case that the presumption was not overcome we do not overturn any of the findings in the report of audit.

The second claim is in no better position as respects the presumption.  It is not as old as the first claim by several years, but it is quite old enough for the presumption of payment to attach in the absence of stronger proof to rebut it. Aside from this it is at least doubtful whether it was not included in the first claim.  There is no evidence that Mrs.

Peters had at any time more than the sum of $583.30 as her separate estate. It is probable therefore that the $150 was a part of that sum. As both claims must be disallowed any further reference to this matter is unnecessary.

> The decree is reversed at the costs of the appellees and the record remitted with instructions to make distribution in accordance with this opinion.