# Biddle, Assignee in Bankruptcy, *versus* Girard National Bank.

| | |
|---|---|
| 109 | 349 |
| 121 | 624 |
| 121 | 645 |
| 109 | 349 |
| 176 | 177 |
| 109 | 349 |
| 208 | ¹567 |
| 110 | 349 |
| 219 | ¹116 |
| h 34 SC | 98 |

1. A judgment obtained in foreign attachment is, in the absence of rebutting evidence, presumed to be paid after the lapse of more than twenty years.

2. Such presumption is not rebutted by the fact that a scire facias on such judgment issued against a garnishee more than twenty years ago, and has since been pending and undetermined.

3. In the absence of evidence to the contrary, it will be presumed that such a scire facias, in which no steps have been taken by either party for more than twenty years, has been abandoned.

4. Owing to the nature of a foreign attachment which, though not strictly a proceeding in rem, seeks to obtain satisfaction of the debt from specific property of the debtor in the hands of the garnishee, as it were by a species of execution process, the common law presumption of payment is peculiarly applicable to a judgment in such action obtained against the defendant by default.

5. For the same reasons, and because the garnishee is a disinterested stakeholder, to whom the court will extend more liberality than to an ordinary litigant, the plaintiff, being the actor, will be held to the duty of prosecuting the scire facias with reasonable speed; if he suffer twenty years and upwards to elapse without taking any step towards enforcement of his claim under the scire facias, the pendency of the action will not be considered a continuous assertion of claim, but it will be presumed, in favor of the garnishee, that the debt has been discharged or adjusted, and the scire facias abandoned. This presumption can be rebutted, but only by proof of such matters as tend to show non-payment of the debt, or to account for the delay in prosecuting the action.

6. The above principles applied to the facts in the present case, and the acts set up to rebut the presumption held to be insufficient.

March 23d, 1885. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and CLARK, JJ. GREEN J., absent.

ERROR to the Court of Common Pleas No. 3, of *Philadelphia county :* Of January Term 1884, No. 229.

This was, in the court below, a scire facias sur judgment in foreign attachment. The material facts were as follows:

On March 22d, 1837, a writ of foreign attachment in case was issued in the old District Court for the city and county of Philadelphia, at the suit of Washington Jackson, John S. Riddle and Michael B. Mahoney, trading as the firm of Jackson, Riddle & Co., against William Sidney Warwick and Thomas Claggett, lately trading as the firm of Warwick & Claggett. The defendants were residents of London, England. The sheriff returned, "Attached and summoned United States Bank, also The Girard Bank as garnishees." On March 3d, 1838, judgment was entered for plaintiffs, against the defendants, by default, and on a writ of inquiry of damages, damages were assessed June 29th, 1838, at $43,555.23.

On October 23d, 1838, a scire facias on the above judgment was issued, returnable to the first Monday of November then next, by the plaintiffs in the judgment against the Bank of the United States and the Girard Bank. On May 8th, 1845, the garnishees filed a plea of nulla bona.

A trial was had against the Bank of the United States, as upon a scire facias against that garnishee alone, and judgment was recovered for plaintiff against said Bank of the United States in 1849.

The docket entries showed no further proceedings until in 1879, the deaths of the plaintiffs, Jackson and Riddle, were suggested of record, and in 1881 Thomas A. Biddle, assignee in bankruptcy of the plaintiffs, Mahoney and Riddle, was substituted of record as plaintiff.

In 1883 the issue on the scire facias against the Girard National Bank, garnishee, came on for trial before LUDLOW, P. J., in the Court of Common Pleas No. 3, of Philadelphia county, to which court the records of the case in the old District Court (abolished in 1874) had been assigned, the parties being as follows: "Thomas A. Biddle, assignee of Michael B. Mahoney and John S. Riddle, who with Washington Jackson, were trading under the firm name of Jackson, Riddle & Co. *v.* The Girard National Bank, garnishees of William Sidney Warwick and Thomas Claggett, lately trading under the firm name of Warwick & Claggett."

On the trial it was shown by the plaintiffs, after putting the docket entries in evidence, the other records having been proved to be lost, that 500 shares of stock had been in the possession of the Girard Bank in 1837, belonging to the defendant Warwick, when the attachment was laid; that it had continued in their hands in Warwick's name from that time

[Biddle *v.* Bank.]

until 1878; that the bank had credited annually the dividends arising from the same to Warwick till 1878; that in certain of the dividend books opposite to the entry of dividends, were written the words, " Don't pay," " not to be paid," in 1837 and 1838; that the Girard Bank suspended payment, made an assignment in 1841 for the benefit of its creditors, and a re-assignment was made to it somewhere about 1846, and it did not credit any dividends to Warwick from 1838 until 1849, when payment was resumed.    The plaintiffs then rested.

The defendants made certain offers to the effect that the Messrs. DeRothschilds Frères, and Messrs. Weston & Young, had filed certain bills in equity against the Bank of the United States and the Girard Bank and Jackson, Riddle & Co., praying that a decree might be made for the transfer of the afore-said stock. and the attachment suit set aside; that Jackson, Riddle & Co. filed pleas to these bills, setting up their foreign attachment as a bar thereto.

The defendants further attempted to show certain papers alleged to be copies of answers of the Girard Bank to the interrogatories of Jackson, Riddle & Co., in which it was stated that the bank held the above stock, but that it was claimed by Messrs. De Rothschilds Frères, of Paris, and Messrs. Weston & Young, of London, and adding that they, the Girard Bank, were " merely stakeholders and having no interest in the controversy."    Both these offers of evidence were excluded.    The docket entries in the case disclosed ap-pearances on behalf of the Rothschilds and Messrs. Weston & Young.

The defendant requested the court to charge, inter alia, as follows:

3. " It appearing from the record that in 1837, Jackson, Rid-dle & Co. commenced an action against Warwick & Claggett, in foreign attachment, in which the Girard Bank and others were summoned as garnishees, in which a judgment against defendants was taken by default on June 29th, 1838; and on October 23d, 1838, this scire facias issued on the said judg-ment.    That the answers of the Girard Bank to interrogato-ries, now lost, were filed in 1845, and a plea of nulla bona appears upon the record on May 8th, 1845.    That at the time the said attachment was laid in the hands of the Girard Bank, William Sidney Warwick was the owner of stock in that bank, which stood in his name on the books of the bank; that after the attachment was so laid, dividends declared on the said stock were not paid, but instead, in the years 1837 and 1838, the words, " not to be paid," or " don't pay," were written opposite the entry of the dividends declared in those years. That subsequently, about 1841, the Girard Bank assigned all

its assets for the benefit of its creditors; that a re-assignment to the bank was made about 1846, and dividends resumed in November, 1849. That in the dividend book, opposite all dividends declared subsequently to those above mentioned, the words "passed to the credit," or "account," of William Sidney Warwick were entered, and the dividends were credited to his account in the Girard Bank. That this continued up to October, 1878, when the stock was sold. That said stock, from the date of the attachment until October, 1878, continued in the name of William Sidney Warwick on the books of the bank. That no immediate step in the cause was taken, as per record appearing. That on March 18th, 1879, the death of Washington Jackson and John S. Riddle was suggested on the record, and additional interrogatories and a rule on the Girard Bank to answer were filed, and subsequently Thomas A. Biddle, assignee of M. B. Mahoney and John S. Riddle, was substituted on the record as plaintiff. Whether, without more facts proved, this case is presumed to be abandoned and discontinued, and all liability on the part of the Girard Bank on account thereof presumed to be at an end." This point the court reserved.

The court charged, inter alia, as follows:

"It appears by the evidence submitted by the plaintiffs in this suit, that five hundred shares stood in the name of Mr. Warwick, and many years ago, I think in the dividend book No. 8, in November, 1836, a dividend of $1,000 was declared, and that since then, from time to time, dividends have been declared upon this stock, and have been passed to the credit of Mr. Warwick on the books of the Girard Bank. It also appears that, from time to time, there were memoranda, in pencil, such as the following: 'Not to be paid,' showing that that cash was not to be disposed of, and not to be paid to anybody, for some reason. Then, again, in another book, No. 10, we have the words in pencil, 'don't pay,' and so on through the records of the bank, showing the stock still standing in the name of Warwick, and dividends declared upon it, up to fifty-five in number, until in May, 1878, the grand total of dividends was $18,956.25.

"The shares, which had originally numbered five hundred, had in the meantime been reduced, by reason of the reduction of the capital of the bank, and its failure, and its starting again, to one hundred and twenty-five shares, and these were sold at fifty-eight dollars a share, the amount of which sale, together with the total of dividends unpaid, make an aggregate of $26,206.25. It also appears that this stock stood in the name of Mr. Warwick from September, 1836, to October, 1878. Well, gentlemen, if that stock belonged to Mr. War-

wick, was levied upon in the hands of the bank by the credi-
tors of Mr. Warwick, who are the plaintiffs in this suit, then,
unless that fact is disputed, or in some way is overthrown,
there was in the hands of this bank in 1878 this amount of
stock of a certain value with accumulated dividends. If there
is nothing else in the case, that must inevitably be the result.
An effort has been made here on the part of the defence to
produce certain testimony which was intended to overthrow
the claim of the plaintiff in this suit, by reason of the pre-
sumptions arising from the lapse of time. Principally that
was the object of the defence. I have ruled out this testimo-
ny as it has been offered, intending thereby, among other
things, to reserve that question of presumption and the cor-
rectness of my own ruling for the consideration of my col-
leagues and myself in the court in banc, simply saying for
the present that, upon all the evidence, the presumptions are
not more violent upon the one side than upon the other, and
are not stronger upon the one side than upon the other, and
therefore, we are thrown back upon the records as they stand
before us, both of the court and of the bank, and the proof of
the plaintiff shows that, whatever may have been the litiga-
tion, the Girard Bank claimed down to 1878 an ownership of
this stock, and that it was sold at that time as the property
of the bank.

" As the case now stands before the court, there seems to
be no evidence from which the jury could find that the stock
was not in Warwick, was not subject to the attachment thus
levied, and that there did not remain in the hands of the
bank, in 1878, whatever the value of that stock then was,
together with the dividends which had accrued from time to
time, and that the plaintiff, if the jury so find from the evi-
dence (and there is nothing that I can see to contradict it),
would not be entitled to a verdict for that amount, with inter-
est thereon from October, 1878. You have the calculation in
your hands. If you find a verdict for the plaintiff, you will
find 'a verdict for the plaintiff, amount of fund in the hands
of the garnishees—so many dollars.' "

Verdict for plaintiff for $32,888.85, the amount found to be
in the hands of the garnishee. Subsequently the court en-
tered judgment for the defendant on the point reserved. The
entry on the docket was as follows: " Rule for new trial abso-
lute, and judgment entered in favor of the defendant on third
reserved point."

The plaintiff thereupon took this writ of error, assigning
for error, inter alia, the action of the court in entering judg-
ment for the defendant *non obstante veredicto*, on the point
reserved.

13 OUTERBRIDGE—23

*Arthur Biddle* and *George W. Biddle,* (with whom were *William Drayton, J. W. M. Newlin, W. Wynne Wister,* and *Edward Waln,*) for plaintiff in error.

*Wayne MacVeagh* and *Benjamin Harris Brewster,* (with whom was *Rudolph M. Schick,*) for defendant in error.

Mr. Justice CLARK delivered the opinion of the court, April 13th, 1885.

The writ of foreign attachment, out of which this contention arises, was issued from the District Court of Philadelphia, in the year 1837, at the suit of Jackson, Riddle & Co., against Warwick & Claggett of London, England; the Bank of the United States, and the Girard Bank, being summoned as garnishees. Judgment, by default, was entered against the defendants on 3rd of March, 1838, and on 29th June following, the damages were, upon a writ of inquiry, assessed at $43,555,23.

On the 23rd October, 1838, a scire facias issued against the garnishees, who in the year 1845, entered a plea of nulla bona. The cause was afterwards so proceeded in, that on 14th December, 1849, judgment was entered against the Bank of the United States, one of the garnishees, for $74,086,13, but nothing appears to have been, at any time afterwards done towards the enforcement collection or revival of this judgment. No proceedings of any kind were taken against the Girard Bank, the other garnishee, from the date of the filing of the plea in 1845, until 18th March, 1879, a period of almost thirty-four years intervening, when the death of Jackson and of Riddle, two of the plaintiffs, were suggested, leaving Michael B. Mahoney, the surviving partner, as the plaintiff in the suit. Subsequently, Thomas A. Biddle, assignee in bankruptcy of Riddle and Mahoney, (under the Act of 1841) was substituted as plaintiff, and, on 23rd February, 1883, the cause came to trial as against the Girard Bank, now the Girard National Bank, as garnishee; the verdict was for the plaintiff for $32,888,85, subject to certain questions of law, which were reserved by the court. A motion was afterwards made for a new trial, and upon due consideration thereof and of the questions reserved, the court on 5th January, 1884, entered judgment in the words and form following:—" The rule for a new trial is made absolute, and judgment is now entered upon the third reserved point, for the defendants." This was, without doubt, a mere blunder, the learned court intended, of course to discharge the rule not to make it absolute. The entries are incongruous and inconsistent; if judgment was entered, the rule was of necessity discharged, and what the court intended, is very plain upon the opinion filed. This

[Biddle v. Bank.]

slip of the pen was certainly the subject of correction and amendment, and we will not do the learned court the injustice to reverse on that ground, but will treat the record as amended, in this respect.

The real controversy which the record presents is, whether or not, on the facts stated in the questions reserved, the proceedings upon the scire facias against the Girard Bank, are presumed to have been abandoned, and the liability of the bank extinguished. But the foundation of the action against the garnishee is, that the plaintiff has an unsatisfied claim against the defendant. The plaintiff cannot subject the garnishee to liability for a debt which has been fully paid; he must, therefore, in order to avail himself of the fund in the garnishee's hands, first obtain judgment, and fix the amount of the debt due from the defendant; if this be done, in a proper way, the garnishee may not perhaps gainsay the amount of that judgment, but it is entirely competent for him to show that the judgment has been paid. We are therefore, in the determination of this cause, in the first instance at least, remitted to the inquiry, whether the judgment, obtained by Jackson Riddle & Co., in 1837, remained in force and unsatisfied in 1883, or from lapse of time was then presumed to have been paid. If the judgment was presumptively paid, it cannot form the basis of a recovery against the garnishee, and it would follow, that the judgment for the garnishee, *non obstante veredicto* was rightly entered.

The rule is well settled, in a long line of cases, that after a lapse of twenty years, a judgment is presumed to be satisfied, unless there are circumstances to account for the delay; Cope v. Humphreys, 14 S. &. R., 15; Foulk v. Brown, 2 Watts., 214. The presumption of satisfaction, from lapse of time, arises in the case of every species of security, for payment of money, whether bond, mortgage, judgment, or recognizance: Diemer v. Sechrist, 1 P. & W. 419; Ankeny v. Penrose, 6 Harr., 192; Pryor v. Wood, 7 Casey, 142; Reed v. Reed, 46 Penn. St., 239; Comm'th v. Snyder, 12 P. F. S., 157; Bentley's Appeal, 3 Out., 500.

We find no case in which the rule has been applied to a judgment obtained on a foreign attachment, but there is nothing in the nature of the action which precludes it; on the contrary, we think it must be conceded, that the peculiarities of this form of proceeding especially invites the application of the rule, when, under the proofs, it could reasonably apply in any case. It is argued, however, that the life and efficacy of the judgment could not in this case be impaired, by mere lapse of time, owing to the continued pendency of the suit upon the scire facias; and, that as neither party, during the

[Biddle *v.* Bank.]

intervening period of thirty years, took any active steps towards the prosecution of the suit, no presumption of payment can fairly arise.

We are not inclined to favor this view of the case. A foreign attachment, although perhaps not a proceeding strictly in rem, is in the first instance, an action against the non-resident debtor's property; it is a process to compel an appearance, and until an appearance is entered, is wholly ex parte : Insurance Co. *v.* Whitney, 20 P. F. S., 248. The judgment by default binds only the fund or goods attached; no execution lies against the defendant's person or other property. Nor is the object or design of the proceeding to provide a lien for security of the debt; it is to furnish a means for its satisfaction. The property attached is, in most cases perhaps, personal, and in many of a perishable quality. The garnishee is a mere stakeholder, whose interest is *in equilibrio;* an involuntary litigant, sometimes, as here, so circumstanced with respect to the subject attached, as to be unable to rid himself of it. Nor is the proceeding a bar to another suit for the same debt; whether the thing attached prove commensurate to the plaintiff's claim, or not, he may; if opportunity offer, at any time desert the attachment, in its ex parte form, and proceed by personal action, and, if the claim be realized in that form of procedure, or satisfaction be otherwise received, the attachment of course falls to the ground. In an action possessing these characteristics, and exhibiting some of the qualities of an execution, the plaintiff must be regarded as the actor, and it is his plain duty to prosecute the scire facias, with reasonable speed; if he suffer twenty years and upwards to elapse, without taking any steps towards enforcement of his claim under the scire facias, it may well be presumed that the debt has been discharged, that all disputed matters have been adjusted, and that the proceedings are abandoned. A garnishee, towards whom the court will exercise more liberality than to an ordinary litigant, is certainly entitled to the benefit of a presumption so reasonable and just; it is contrary to the teachings of our experience and to the usual course of events, that a creditor should so long be silent without having received satisfaction.

In the case of Foulk *v.* Brown, 2 Watts., 209, this court said : "The rule of presumption, when traced to its foundation, is a rule of convenience and policy, the result of a necessary regard to the peace and security of society. No person ought to be permitted to lie by, whilst transactions can be fairly investigated and justly determined, until time has involved them in uncertainty and obscurity, and then ask for an inquiry. Justice cannot be satisfactorily done when parties and witnesses are dead, vouchers lost or thrown away, and a new gen-

eration has appeared on the stage of life, unacquainted with the affairs of the past age, and often regardless of them. Papers which our predecessors have carefully preserved are often thrown aside or scattered as useless by their successors."

In no reported case, perhaps, is the wisdom of the public policy which gives origin to the rule, more manifest than in the case at bar. From the institution of the suit, to the time of the trial against the Girard National Bank, a period of forty-two years had elapsed; the parties were almost all, if not all, dead. The United States Bank had long ago become bankrupt and passed out of existence. The Girard Bank had passed through various vicissitudes of fortune; had once or twice failed; had been twice re-chartered, its capital reduced, from $5,000,000, to $1,000,000, and the number and par value of its shares greatly changed.

It had, however, for many years before the trial, been organized under the National Bank Act, and its present prosperous condition, and the great value of its shares, were facts admitted. With a single exception every officer of the bank in 1837 had died; Mr. Shaffer only survived, but as he was then the paying teller only, he had no knowledge of the matter; the books of the bank, with the exception of the dividend book, had been destroyed as being of no value. The distinguished counsel, whose names adorn the margin of the record, with one exception, had passed away, and the record file papers were all lost, so that we cannot now know what interests they severally represented, or how their names came to be there written. The parties, their counsel, the records, the books, and the witnesses were gone; a new generation had indeed appeared upon the stage of life, and everything connected with the case, was involved in the utmost uncertainty and obscurity. No explanation whatever was made, no excuse given, for this long delay. Under such circumstances and in such a case, but one inference can be drawn.

We cannot regard the mere prolonged pendency of the suit, upon the scire facias, where no steps have been taken for so long a period, by either party, as a continuous assertion of claim on part of the plaintiff. Huffmans v. Stiger, 1 Pitts. Rep., 185, was an ejectment brought in 1824; the cause was put at issue in 1825, but nothing was done in the case from 1826 to 1853, when application was made to substitute the heirs of the deceased plaintiff. Chief Justice BLACK delivering the opinion of the court says: "These facts raise the question, whether a suit of which no notice has been taken by either party for twenty-seven years, can be revived by one of them after that time. We are clear that it cannot, without violating all the analogies of the law, and giving to a false claim every advan

tage, which it is the object of limitations and presumptions to
take from it.   An unjust demand, if prosecuted while it is
fresh, may. easily be defeated by counter-proof.   But the wit-
nesses may die, or the papers be lost, in a few years.   When
a generation passes away, the evidence which would establish
the proof is almost sure to have disappeared. . . . . . When
neither party makes any move in the suit for a long time,
there is a natural, and should be a legal, presumption that the
dispute has been settled and adjusted to the satisfaction of
both.   What precise length of time is required to make this
presumption full and complete, it is not now necessary to de-
cide.   Certainly it is less than twenty-seven years."   The
cases of Morford *v.* Cook, 12 Harr., 92; Hemphill *v.* McCli-
mans, 12 Harr., 367; and VanLoon *v.* Smith, 7 Out., 238 are
in support of the same doctrine.   The case last cited was a
scire facias to revive and continue the lien of judgment, obtain-
ed in 1855.   The writ issued 17th July, 1860, and the defen-
dant, in the same month entered pleas of nul tiel record and
payment.   No further proceedings were had, until 11th Janu-
ary, 1882, when the cause was brought to trial.   We there
held, that the issuing of the scire facias, and the pendency of
the suit thereon, after that lapse of time, did not affect the or-
dinary application of the rule :   Ward *v.* Patterson, 46 Penn.
St., 372; and Wilhelm's Appeal, 79 Penn. St., 141, have no
relevancy to the question here involved.   The rule, invoked
by the garnishee, is not founded in mere laches, although
that may always appear; it is a rule of evidence, growing out
of public policy and convenience, established for the peace and
security of society, and hence serves a larger purpose than the
mere punishment of laches.   An examination of the remain-
ing cases, cited by the plaintiff in error, English and Ameri-
can, does not convince us that they are seriously in conflict
with the views here expressed.

But this presumption has not the effect of a limitation; it
may be rebutted or repelled by proof of such matters as tend
to show non-payment of the debt, or account for the delay, and
it is argued that such facts and circumstances are here shown,
as required the court to submit the case to the jury.

The fact that the process is against a specific fund, which
it is shown was not paid, is wholly ineffective for the purpose
stated, as the creditor was not bound.to adhere to the remedy,
or look to that fund for satisfaction.   Nor is it of any conse-
quence that the defendants were aliens, and actually resided
in England; the garnishees were entitled to protection, if it
be assumed that the defendants were not.   It is said however,
that the bank in the year 1841, made an assignment for credi-
tors, and was at other times seriously embarrassed, and that

had the suit been tried prior to 1860, there is no evidence to show that the judgment would have been paid, or could have been realized; it is sufficient to say, that the burden of proof was upon the plaintiff, and there is no evidence to show that it would not have been paid, or could not have been made, from the garnishee's estate.

It is true, that a plea of nulla bona was entered by the garnishees, but this plea cannot, even in the light of subsequent events, and of the verdict, be characterized justly, as *supressio veri*. The plea did not, necessarily, negative the custody of the fund; by that plea only, could the bank protect its interests against conflicting claims, if any conflict existed, and the lapse of forty years had made proof upon this point impossible. The appearance of Mr. Charles Ingersoll, however, for DeRothschild Frères, and for Weston & Young, is a fact, now wholly inexplicable upon any theory, other than that a conflict was at least threatened. The ravages of time, by the plaintiff's own default, have destroyed all direct evidence upon this point, record or otherwise, but it seems to us, that the intrusion of these strangers, into a suit in which they had no apparent concern, cannot now be otherwise explained. The burden is upon the plaintiff, and the mere entry of the plea is certainly insufficient to establish any fraudulent suppression of the truth, by the garnishees. The fund has been found in the garnishee's hands; the entries upon the books of the bank show, that for thirty years and upward, the dividends were detained, but if the plaintiffs have no unsatisfied claim, upon which to rest their attachment, the fund is free, and they can have no farther claim upon it.

The judgment, in favor of the garnishee, the Girard National Bank, *non obstante veredicto*, is therefore affirmed.