# JAMES GREGORY'S EXRS. v. COMMONWEALTH.

ERROR TO THE COURT OF COMMON PLEAS OF FULTON COUNTY.*

Argued May 30, 1888—Decided October 1, 1888.

121 611
121 637
121 638
|121 611|
|153 435|
121 611
184 432

121 0 611
h 22 SC 7208

121 611
f221 7414

121 611
f226 4314

1. In the absence of sufficient explanatory evidence, all debts excepted out of the statute of limitations, act of March 27, 1713, 1 Sm. L. 76, unclaimed and unrecognized for twenty years, are presumed to have been paid.

2. This presumption, an artificial rule of law and unlike the said statute of limitations, is not a bar to an action on the original contract, and therefore a new promise is not necessary to sustain the suit.

3. As the action is not founded on the new promise, but on the original indebtedness, it is of no consequence that the admission of non-payment is accompanied by a refusal to pay.

4. The evidence to rebut the presumption of payment after twenty years, must be satisfactory and convincing; especially, when the suit is not brought until after the death of the debtor.

5. Evidence admissible to show that the debt is in fact unpaid, may consist of defendant's admissions made to the creditor himself, or to his agent, or even to a stranger; but an admission will not be as readily implied from language addressed casually to a stranger, as when addressed to the creditor in reply to a demand made.

6. In such a case, the defendant stands upon a presumption of law binding upon both court and jury until invalidated by proof; the plaintiff in rebuttal, upon a presumption of fact, which he claims to arise out of the evidence.

7. Wherefore, whether the facts sought to be established in rebuttal of the presumption are true, is a question of fact for the jury; but, whether, if true, they legitimately give rise to the inference of non-payment, is a question of law for the court.

8. McLean v. Finley, 2 P. & W. 97, and Summerville v. Holliday, 1 W. 507, abandoned; dissenting opinion of KENNEDY, J., in Summerville v. Holliday, 1 W. 515; the later cases, Backestoss v. Commonwealth, 8 W. 287; Delany v. Robinson, 2 Wh. 506; McQuesney v. Hiester, 33 Pa. 435; Bentley's App., 99 Pa. 500; Peters's App., 106 Pa. 340; Lash v. Von Neida, 109 Pa. 207; Biddle v. Girard N. Bank, 109 Pa. 349, and others followed.

9. In the present case, oral admissions to strangers to the debt sued for,

---

* This case, belonging to the Middle District, should appear with the other cases from that district in the next volume, but it is here reported on account of its relation to the subject matter of the three which immediately follow it.

which were vague, uncertain and equivocal in meaning, were held insufficient to warrant their submission to the jury in rebuttal of the presumption of payment.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK and WILLIAMS, JJ.; TRUNKEY, J., absent.

No. 20 May Term 1888, Sup. Ct.; court below, No. 67 June Term 1887, C. P.

On April 22, 1887, a scire facias sur recognizance in the Orphans' Court, was issued in the name of the Commonwealth of Pennsylvania, for use, against Henry Gregory and D. C. Spitzer, executors of James Gregory, deceased, to enforce the payment of the share of John Gregory in the real estate of Joseph Gregory, deceased. The defendants pleaded payment.

At the trial on October 10, 1887, it was made to appear that Joseph Gregory, a resident of Fulton county, died intestate in 1856, leaving to survive him three brothers, one of whom was John Gregory, one sister, and the children of a deceased brother and of two deceased sisters. Two of the brothers, James and Moses Gregory, became the administrators of his estate, and on August 4, 1857, settled an account which was confirmed and showed a balance due accountants of $1,380.98. A second and final account, as corrected and confirmed on October 29, 1859, showed a balance due accountants of $350.12. On January 13, 1866, proceedings in the Orphans' Court for the partition of the real estate of Joseph Gregory terminated in a decree awarding the land to James Gregory, who entered into the recognizance upon which the suit was brought. At this time and until his death in 1878, John Gregory, a beneficiary in the recognizance, lived in the state of Indiana.

The plaintiff to rebut the presumption of payment arising from lapse of time, called several witnesses who testified to conversations with James Gregory in his lifetime and within 20 years before the suit was brought. These conversations sufficiently appear in the Opinion of the Court.

The defendant put in evidence the administration accounts referred to above, and the case closed upon the evidence.

The court, McCLEAN, P. J., charged the jury:

You have seen the origin of the cause of action in this case.

The estate of Joseph Gregory, deceased, was settled by his brother James, who is also now deceased, and Moses Gregory, administrators. The personal estate was settled in the course of this administration. James afterwards came into the Orphans' Court and asked to institute proceedings in partition of the real estate of his brother Joseph, and after the valuation made in that case by the inquest, he came into court, and on January 13, 1866, entered into a recognizance for the payment, among other shares, of a share due to his brother John, the property having been taken by James at an advance somewhat over the valuation, and decreed to him, the day before, January 12, 1866. This put the title to this real estate in James Gregory at that date.

The Orphans' Court act of 1832 [§ 37, act March 29, 1832, P. L. 201] provides that in every such case the party accepting the real estate, or some one on his behalf shall pay " to the other parties interested, their proportionable parts of the value of such estate, according to the just appraisement thereof, made in manner aforesaid, or giving good security by recognizance or otherwise, to the satisfaction of the court for the payment thereof, with legal interest, in some reasonable time, not exceeding 12 months, as the court may direct." Now it appears, gentlemen, that in this case the share was payable presently, on January 13, 1866. James Gregory acknowledged himself bound to the commonwealth of Pennsylvania in a certain sum, on condition that he would pay his brother John Gregory, the sum of $337. John Gregory could have immediately demanded that amount. The person " for whose use payment or satisfaction shall be so made, in any of the cases aforesaid," for the part or share of such real estate, shall be forever barred of all right or title to the same.

The defendants, the executors of the conusor in this case, say that it is paid. They offer you no evidence of direct payment. They say it is presumed to be paid by the lapse of time which has run before any demand was made upon them; and you will see, gentlemen, that that has been twenty-one years, three months and nine days. On January 13, 1866, this money was acknowledged to be due to John Gregory. No suit was brought, no demand made by any action in court upon James Gregory or the executors of his will, until April 22d

Charge of Court below.

last, and that is the case we are now trying; and it is after an interval of time, as I have said, of twenty-one years, and three months and nine days.

[This Orphans' Court act [§ 50, supra] further provides that "where a recognizance hath heretofore been, or shall hereafter be taken in any Orphans' Court, on the acceptance of the real estate of a decedent at the valuation or appraisement thereof, as hereinbefore provided for, and the same, or any part thereof, shall be satisfied or paid to the person or persons interested therein, his, her, or their agent or attorneys, any such person so having received satisfaction of the amount coming to him, shall enter an acknowledgment thereof upon the record of such court, which shall be satisfaction and discharge of the said recognizance, to the amount acknowledged to be paid." Here was a duty resting upon John Gregory, if the whole or any part of this money had been paid to him in his lifetime. He could either come in to the Orphans' Court, or the office of the clerk of the Orphans' Court, and enter satisfaction if he had received the whole amount, or give credit for whatever amount might have been paid; but it has not been done. So it rested upon him, and the law enjoined upon him, if the money was paid, to enter satisfaction of record to the amount acknowledged to be paid, and then "the recognizance shall cease to be a lien on the real estate of the conusor to a greater amount than the principal and interest actually remaining due."

Again [§ 51, supra]. "If any person who shall have received satisfaction as aforesaid, for his claim or lien, secured by such recognizance, shall neglect or refuse to enter upon the record his acknowledgment thereof, upon the written request of the owner of the premises, bound by such recognizance or of any part thereof, or of his legal representative or other persons interested therein, on tender of all the costs for entering such acknowledgment within sixty days after such request and tender as aforesaid, such person, for every such default, shall forfeit and pay to the party aggrieved the sum of fifty dollars, absolutely, and any further sum, not exceeding the amount by such person received, as shall be assessed by a jury on a trial at law." If this amount had been paid to John Gregory, James could have compelled him to come and enter satisfac-

tion, or to execute a power of attorney to some one else to do it. " Or the Orphans' Court, on due proof to them made that the entire amount due to any heir, legatee or distributee, shall have been fully paid and discharged, may make an order for the relief of such person from any recognizance or other recorded lien; which order, being certified to the proper court where such lien may appear, shall be entered on their records, and shall enure and be received as a full satisfaction and discharge of the same."

This, gentlemen, is the provision of the original Orphans' Court act of 1832. Later than that, in 1850 [act of April 26, 1850, P. L. 581], we have extended and applicable to recognizances of the Orphans' Court the provisions of the act of 1823, relating to mortgages. That is made applicable to "recognizances in the Orphans' Court of any county of this common wealth which are or may be liens upon any real estate within the same, in as full and particular a manner as if the several provisions of said act were here repeated at length." And " the proceedings for the discharge and satisfaction of the lien of any such legacy or legacies, or any such recognizance, shall be the same as those prescribed in the act referred to in the preceding section, in reference to the satisfaction of mortgages, except that with regard to the aforesaid recognizances, the proceedings shall be had in the Orphans' Court, upon whose records the said recognizances are found." If we turn to the act of 1823 [act of March 31, 1823, 8 Sm. L. 131], which is entitled an act relating to mortgages, and made applicable to recognizances in the Orphans' Court, we find this: " In all cases where the legal holder or holders of a mortgage have died, or shall die, without entering satisfaction upon the record of the same, and also in all cases where the legal holder or holders of a mortgage have removed, or shall remove, or be out of the state, and payment being made of all the money or amount due, or to become due thereon, and shall so continue for two years, in such case the mortgagor, (in this case the conusor, James Gregory,)—"or mortgagors, his, her or their legal representatives, or the owner or owners of the mortgaged premises, or any or either of them, may petition the Court of Common Pleas of the county where the mortgaged premises are situate, setting forth the premises; whereupon the said

court shall direct the sheriff of the said county to serve a notice, stating the facts set forth in the petition, on the legal representative or representatives." In this case it could have been served upon the administrator of John Gregory, after his death in 1878. If he could not be found in this county the sheriff could give public notice as aforesaid.

Now, I referred you, gentlemen, to the provisions of the law, showing what could have been done, what could have been required, what indeed the law did make incumbent upon John Gregory, if demand had been made on him for the satisfaction of record of the whole or part of this share; and the remedy that James Gregory had, had any such demand been made, to have satisfaction appear where the evidence of the debt appears upon the record; but it has not been done; no entry has been made or authorized so far as any evidence goes to show.] [2]

Gentlemen, you will keep in mind the legal principle that the lapse of twenty years raises a presumption of payment in such a case as this. It is the policy of the law to prevent stale claims being made and prosecuted. Where a creditor or party entitled lies by for a period of twenty years, and no demand is made upon any one, the law raises the presumption of payment. But this presumption yields before any circumstances and facts on which the mind can rest with satisfaction by which it is rebutted or repelled. It has not the power or effect of a positive statutory enactment of limitation or oblivion, which extinguishes the original demand, and requires a new promise to pay, or its equivalent.

Observe then, gentlemen, that presumption of payment from lapse of time may be rebutted by any facts which go to destroy that presumption. This presumption is extinguished by an intermediate acknowledgment of the obligor that the bond is still due and unpaid, or by a part payment of the principal or interest within 20 years, or by the commencement of legal proceedings. We have no evidence in this case of a part payment of principal or interest within 20 years; we have no evidence of the commencement of any legal proceedings until after the lapse of twenty-one years, three months and nine days. But the plaintiffs answer, or attempt to answer this legal presumption from lapse of time, by asserting that there

was an intermediate acknowledgment of the obligor, James Gregory, that the bond was still due—that the recognizance was still due and unpaid.

Now, they have furnished you evidence. . . . . .

Gentlemen, we think from the argument of the counsel and with the help I may have given you, and the attention you have paid to the testimony from the witness stand, you will be able to understand the issue to be determined by you between these parties. If you find that the presumption of payment from the lapse of time, arising from the running of 20 years or more, can be used by the defendants as a defence under all the evidence, and if you find that the evidence offered on the other side, on the part of the plaintiffs does not repel or rebut this presumption, your verdict will be for the defendants. If you are satisfied, looking at the law as we have given it to you, from the evidence, that this long lapse of time should give the estate of James Gregory the benefit of the legal presumption, you will find for the estate. But, gentlemen, as I said, this presumption yields before any circumstances and facts on which the mind can rest with satisfaction by which it is repelled or rebutted. So take the evidence of these five witnesses, Judge Gordon, William Gordon, Miss Catharine Gregory, Mrs. Peck and Moses Peck. Weigh their evidence and determine for yourselves whether you can rest your mind with satisfaction upon their statements of what was said by Mr. James Gregory in his lifetime, and whether that evidence rebuts or repels this presumption of payment. If having looked at it altogether, looking at the law relative to the parties to this recognizance and the declarations of James Gregory, you are satisfied that the debt has not been paid, and that this evidence is a sufficient answer to the legal presumption of payment, you will find for the plaintiffs.

The verdict of the jury was in favor of the commonwealth, for use of the personal representatives of John Gregory deceased, for $775.22. Judgment having been entered, the defendants took this writ, specifying that the court erred :

1. In submitting to the jury an issue not sustained by sufficient evidence ; on the contrary, the court should have ruled as matter of law that a recovery was prevented by the pre-

sumption of payment and should have directed a verdict in favor of defendants.

2. In that part of the charge embraced in [ ]²

*Mr. John Stewart* (with him *Mr. George A. Smith*), for the plaintiffs in error:

The debt which is here sought to be recovered was demandable January 13, 1866. It was evidenced by a recognizance in the Orphans' Court of Fulton county, and was payable to John Gregory, since dead. The conusee is also dead and the action is against his executors. The bringing of the action was the first demand ever made, and this occurred twenty-one years, three months and nine days after right of action accrued. The defendants interposed the legal presumption of payment and pleaded its protection. The effort of the plaintiffs was to rebut this presumption by evidence adduced for that purpose. Our contention now is that the evidence offered was wholly insufficient in law to overcome the presumption, and that it was the duty of the court upon the trial of the case to so instruct the jury, and direct a verdict for the defendants.

1. The rule of presumption, when traced to its foundation, is a rule of convenience and policy, the result of a necessary regard to the peace and security of society. No person ought to be permitted to lie by whilst transactions can be fairly investigated and justly determined, until time has involved them in uncertainty and obscurity, and then ask for an inquiry. Justice cannot be satisfactorily done when parties and witnesses are dead, vouchers lost or thrown away, and a new generation has appeared, unacquainted with the affairs of a past age and often regardless of them. Papers which our predecessors have carefully preserved, are often thrown aside or scattered as useless by their successors. It has often been truly said, that if families were compelled to preserve them, they would accumulate to a burdensome extent. Hence statutes of limitations have been enacted in all civilized communities; and in cases not within them, prescription or presumption is called in as an indispensable auxiliary to the administration of justice: Foulk, v. Brown, 2 W. 217.

2. The facts relied upon to establish the rebuttal are for the jury, but whether such facts if proved amount to a rebuttal of

the presumption is a question for the court. The inference of payment of a specialty from lapse of time is a presumption of law, and is the subject of legal direction. The rebuttal of such presumption by circumstances, is also for the court, but the truth of the facts from which the rebuttal is alleged to arise, is to be left to the jury: Ankeny v. Penrose, 18 Pa. 193. Beale v. Kirk, 84 Pa. 417, is a case directly in point. PAXSON, J., delivering the opinion, says: It was therefore error in the learned judge of the court below to deprive the defendants of the benefit of the presumption of payment from lapse of time. There was not sufficient evidence to rebut such presumption, and he should have so instructed the jury. There is no conflict of evidence here. The facts being established, whether they are sufficient to rebut it, is a question for the court, not the jury. The presumption is one drawn by the law itself from a given state of facts, and whether it exists or not is necessarily for the court: Reed v. Reed, 46 Pa. 259; Delany v. Robinson, 2 Wh. 503.

3. Whatever the purpose of the recital of the statutes, the effect clearly was to weaken the presumption of payment by setting off against it the presumptions (1), that John Gregory, if he had been paid, would have entered satisfaction voluntarily; and (2), that if payment had been made, James Gregory would have compelled the entry of satisfaction under the provisions of the act of assembly. The law raises no such presumptions; but from the language used by the court, the average jury would understand just the opposite. Between "what could have been done" and "what could have been required" and "what the law made incumbent" it would have been difficult for the ordinary juror to give proper weight to the fact that "nothing had been done." The conclusion that he would most easily and naturally gravitate towards, and to which he did gravitate, as the result shows, would be, that inasmuch as none of these things had been done, that is, by way of entering satisfaction on the record, that, therefore, no payment had ever been made.

*Mr. W. U. Brewer* (with him *Mr. John P. Sipes* and *Mr. J. Nelson Sipes*), for the defendants in error:

1. The presumption of payment is a presumption of law.

The law shifts the burden of proof upon the shoulders of the plaintiff and requires him to show that the debt is not paid. He may do this by showing such acts and declarations of the defendant as are contradictory, or inconsistent with the theory, that the debt is paid. In cases where the trial is by jury, the presumption of payment is such a one as the law makes through the medium of a jury. In Crist v. Brindle, 2 P. & W. 262, Chief Justice GIBSON said: " Legal presumptions are again divided into such as are immediate, or conclusions which the law itself makes without the aid of a jury; and mediate, or such as the law makes, but through the medium of a jury. Of the last kind is the presumption of payment from the lapse of twenty years, which is only evidence of the fact, but evidence from which, when not rebutted, the jury is bound to draw a conclusion which cannot be drawn from it by the court: Starkie, P. iv., 1240." And see: Diehl v. Ihrie, 3 Wh. 143; Church v. Miles, 1 Wh. 229. " The rebuttal of the presumption by circumstances, is also for the court, but the truth of the facts from which the rebuttal is alleged to arise, are to be left to the jury. Still, however, the question is often so mixed up and complicated with law and fact, that the whole matter of repelling the presumption ought to be left to the jury, as in McDowell v. McCullough, 17 S. & R. 51;" Ankeny v. Penrose, 18 Pa. 193.

2. A new promise is not required to defeat the presumption. Any competent evidence so strongly tending to show that the debt is unpaid, as to overcome the probability of payment, declared by the law, after the lapse of twenty years, to be prima facie evidence of payment, will, from whatever source derived, or whatever its nature, repel the presumption. These may be admissions of the defendant which show that the debt is not paid, or admissions totally inconsistent with the presumption behind which the defendant shields himself. In such case the defendant cannot complain, for he casts away the very defence the law gives him. In connection with such admissions there may be also facts and circumstances, which sufficiently account for the delay of the creditor: Eby v. Eby, 5 Pa. 435; Stout v. Levan, 3 Pa. 235; McQuesney v. Hiester, 33 Pa. 435.

3. Such admissions may be made to a stranger: Reed v. Reed, 46 Pa. 239. Slighter circumstances are sufficient to repel

the presumption than are required to take the case out of the statute of limitations; Foulk v. Brown, 2 W. 209; Levers v. Van Buskirk, 7 W. & S. 70; Norris's Appeal, 71 Pa. 106. In this case all admissions are inconsistent with the theory of payment, and the very evidence offered by defendants, to wit, the administration accounts, is inconsistent with the theory that James Gregory's declarations are referable to John Gregory's distributive share in the estate of Joseph Gregory: McQuesney v. Hiester, 33 Pa. 435.

OPINION, MR. JUSTICE CLARK:

This is a proceeding by scire facias upon a recognizance, taken in the Orphans' Court of Fulton county, in the partition of the real estate of Joseph Gregory, who died intestate some time prior to the year 1856. The real estate of the decedent was on the 13 January, 1866, accepted at the valuation by James Gregory, and the recognizance in suit was given to secure the share of John Gregory, who, at that time and until his decease in 1878, resided in the state of Indiana.

No suit was brought, nor does it appear that any specific demand for payment of the money secured by the recognizance was made, until after the death of the conusor, James Gregory, in 1887. A period of twenty-one years and three months having intervened, the executors of the last will and testament of James Gregory, deceased, interpose the presumption of payment which arises from this great length of time. Their contention is that this delay in the collection of the recognizance has not been in any way explained, and that the evidence does not establish any facts, by way of admission or otherwise, sufficient to rebut the presumption that the debt has been discharged.

All debts excepted out of the statute of limitations, unclaimed and unrecognized for twenty years, in the absence of sufficient explanatory evidence, are presumed to have been paid. This presumption is an artificial and arbitrary rule of the law, derived by analogy from the English statute of limitations; it originated in equity, but was afterwards engrafted into the common law, and has since been steadily maintained. It is not, like the statute of limitations, a bar to an action on the original contract; therefore, a new promise is not necessary to sustain the suit. Any competent evidence which tends to

show that the debt is in fact unpaid is admissible for that purpose. The evidence may consist of the defendant's admissions made to the creditor himself: Eby v. Eby, 5 Pa. 435; or to his agent or even to a stranger: Morrison v. Funk, 23 Pa. 423; Reed v. Reed, 46 Pa. 239; but an admission will not be as readily implied from language casually addressed to a stranger, as when addressed to the creditor in reply to a demand for the debt: Bentley's Appeal, 99 Pa. 500. It is of no consequence that the admission of non-payment is accompanied by a refusal to pay; the action is not founded on a new promise, but on the original indebtedness; the question, as against the presumption, is whether or not the debt is in fact unpaid.

The facts and circumstances relied on to rebut the presumption must necessarily be within twenty years before suit is brought, and, as the recollection of the exact words and import of an oral admission must necessarily become more indistinct with the lapse of years, the force of such an admission will in general be lessened as the time from its occurrence increases. On the other hand, after twenty years, the presumption will gather strength with each succeeding year, and the evidence to overthrow it must of course be correspondingly increased. After what lapse of time beyond twenty years, if ever, this presumption which is disputable will be conclusive has never been determined, and as the law now stands each case must stand on its particular facts and circumstances. It is not required that the same precision and particularity of proof shall in all respects be observed, as has been required to remove the bar of the statute of limitations, but as the presumption of payment after twenty years is a strong one: Kline v. Kline, 20 Pa. 503, the evidence to rebut it must be satisfactory and convincing: Peters's Appeal, 106 Pa. 340; Eby v. Eby, 5 Pa. 435; Sellers v. Holman, 20 Pa. 324; especially is this so when the suit is not brought until after the defendant's death; it must, according to the cases, carry conviction to the mind of the court, that if the facts alleged are true, the matters in issue are definitely and distinctly established. In a case like this, the defendant stands upon a presumption of law which is binding alike upon the court and jury, until invalidated by proof; and the plaintiff in rebuttal upon a presumption of fact only, which he claims to arise out of the evidence: whether or not the

matters sought to be established are true is a question for the jury, but whether the facts and circumstances relied on, if true, would legitimately give rise to the presumption of fact referred to, is necessarily a question of law for the court.

In Delany v. Robinson, 2 Wh. 506, the trial judge directed the jury that the testimony of a particular witness, if true in fact, rebutted the presumption of payment in point of law, and that as there was no evidence in the cause which purported to contradict him, the question depended on his credibility, which was left to the jury. This was assigned for error, and Chief Justice GIBSON, on a rule for a new trial, said : " The inference of payment from lapse of time is a presumption of law, and the subject of legal direction ; every jurist, whether judge or text writer, treats of it as such. The rebuttal of it by circumstances left to the jury for the truth of the fact only, is also for the court." To the same effect is the language of the same learned judge in Backestoss v. Commonwealth, 8 W. 286, where, referring to the contrary doctrine of McLean v. Finley, 2 P. & W. 97, and Summerville v. Holliday, 1 W. 507, he says : " A different rule, however, was subsequently laid down in Delany v. Robinson, 2 Wh. 503, and recognized in Diehl v. Ihrie, 3 Wh. 149, for the justness of which there are powerful arguments. Presumptions from lapse of time being founded in policy and convenience, are in effect judicial statutes of limitation, which, as they are mixed of fact and law, are to be dealt with, not exclusively by the court or the jury, but by each according to its function and within the limit of its province. The very period is borrowed from a statute ; and what shall suspend the running of such a statute has always been for the court, because it is an unmixed question of law, which admits not of the action of a jury, just as an unmixed question of fact admits not of the action of a court. But from the decision of a mixed question, the court has as much right to exclude the jury as the jury have to exclude the court; so that to act legitimately they must act in unison, each in its sphere, the jury pronouncing the facts, and the court assigning them their consequences."

In McQuesney v. Hiester, 33 Pa. 435, the action was for arrears of ground-rent for twenty-eight years. It appeared in the defendant's proofs that the parties under whom the defendant claimed had entered into an agreement, with other lot

owners, not to pay until the plaintiff established his right, but to resist payment, and that they did resist payment. The court thereupon ruled, as matter of law, however, submitting the question to the jury, that from these facts thus established the delay was explained and accounted for, and that no legal presumption of payment arose. So in Reed v. Reed, 46 Pa. 239, Mr. Justice STRONG says: "It must be borne in mind that the presumption from lapse of time is not that there is no contract between the parties. If it were, proof of a new contract might be necessary. It is only an inference that the debtor has done something to discharge the debt, to wit, that he has made payment; whilst it is rebutted by simple proof that payment has not been made, and, the facts being established, whether they are sufficient to rebut it is a question for the court, and not for the jury. The presumption is one drawn by the law; it is from a given state of facts, and whether it exists or not is necessarily for the court If authority is needed for so plain a proposition, it may be found in Delany v. Robinson, 2 Wh. 503, where it was squarely so decided." To the same effect is Sellers v. Holman, 20 Pa. 321; Bentley's Appeal, 99 Pa. 500; Michener v. Michener, 17 W. N. 266; Lash v. Von Neida, 109 Pa 207; Biddle v. Girard N. Bank, 109 Pa. 349; Boyd v. Grant, 13 S. & R. 124; Ankeny v. Penrose, 18 Pa. 193. Therefore, in Beale v. Kirk, 84 Pa. 415, our brother PAXSON said: "The facts being established, whether they are sufficient to rebut it is a question for the court, not the jury; the presumption is only drawn by the law itself from a given state of facts, and whether it exists or not is necessarily for the court:" citing Reed v. Reed, 46 Pa. 239; Delany v. Robinson, 2 Wh. 503. This declaration is repeated in Peters's Appeal, 106 Pa. 340.

It is undoubtedly true that by the earlier cases in this state: McLean v. Finley, supra; Summerville v. Holliday, supra, where there was any evidence to account for the delay it was the duty of the court to refer it to the jury as an open question of fact to determine as to actual payment; but this doctrine as we have seen has been practically abandoned; the rule to be drawn from the later cases is in accordance with views expressed in the dissenting opinion of Mr. Justice KENNEDY in Summerville v. Holliday, where the origin, history, and proper application of the rule is most ably and elaborately considered.

It may be difficult, perhaps, to lay down any general rule by which the facts of each case may be determined, as matter of law, to be sufficient or insufficient to prevent the presumption of payment from arising, or to rebut it after it has arisen; but it is certainly consistent with the nature and design of this provision of the law that its application should be directed by the court rather than by the jury.

Applying these principles to the case now under consideration, was the evidence sufficient to justify the court in referring the case to the jury to determine as to the actual payment? James Gregory was the administrator of the estate of Joseph Gregory, deceased, and had settled his account, which, as confirmed by the Orphans' Court, on 24 October, 1859, showed a balance of $350.12 due to the accountants. The recognizance was entered into on January 13, 1866. Peter Gordon testified, in substance, that about the year 1875 he had a conversation with James Gregory, in which James said he had not heard from John lately; he thought John was dead. Gordon then asked him whether there was not a little coming to John from his brother Joseph's estate, and James replied that it "had never been fairly settled. James said he didn't know where he was; hadn't heard from him for so long." Gordon states the conversation in these words: "I says, isn't there something coming to John from his brother Joseph's estate? Says he, I don't remember whether he said it was unsettled or whether it wasn't fairly settled, something that way; he said it hadn't been fairly settled." What had not been fairly settled? Was it the personal estate or the recognizance? Apart from the legal presumption that the recognizance was paid, there is not the slightest proof that any settlement of it had ever been attempted; the reference would appear to be to something which had been settled but not fairly settled. True, the witness was not able to remember whether James said that John's share had "never been fairly settled," or was "unsettled," but the burden of proof was upon the plaintiff, and we are not, without reason, to accept that alternative which may happen to be most favorable to him; but the testimony of Gordon may be read in the light of the other evidence. William Gordon testified as follows: "In August, 1886, James Gregory came to my place; he talked about going away; I told him he shouldn't be

in a hurry, he didn't have much to bother him. He said he wanted to go back home, that he had got a letter from his brother John's son, and he hadn't wrote to him; hadn't answered his letter and was anxious to get back and write to him to know who his mother was. He said his brother John had been dead about eight years; he said he had wrote to him to know who his mother was—to his brother John's son. I didn't ask him at all how or when he owed him anything, but he said his brother Joe had paid a judgment for John a good many years back, and he didn't know but one would balance the other. He said if he was to drop off he didn't hardly know how his business would be settled up. He said the son had written in regard to the share that his father claimed in his brother Joseph's estate." Catharine Gregory testified that she had a conversation with James Gregory (the time was not fixed); he said: "he had got a letter from one of John Gregory's heirs, that they wanted their father's interest in Joseph Gregory's estate, and then he said he wanted to be sure it was one of John Gregory's heirs, and he said he had wrote back to ask him to tell who his mother was before she was married to John Gregory. Last August a year he came to visit us again; he said he had got an answer from John Gregory's heirs and he was certain now it was one of John Gregory's heirs; that he intended to send a little money sometime; he said the heirs had wrote to him they wanted their father's interest in Joseph Gregory's estate." Moses Peck testifies that he had a conversation with James Gregory; he says, "He (Gregory) got a letter; the letter came to our place; the letter was kept for him until he came. He handed it to Gus Robinson and he read it. He says, when he got to the place where it says, 'grandfather's estate,' he says, 'he is mistaken, it is brother Joseph,' says he. 'His grandfather was dead before my brother John was married.' That was about all. Says he, 'Uncle James, I understand you are administrator of grandfather's estate.' He wanted to know something about their affairs, and Mr. Gregory said he was mistaken it was his brother Joe. He said he wanted to write and answer it and didn't know how to write. He said he didn't think there would be anything coming to him, for he said his brother Joseph had paid some money for John or loaned him some," etc.

This testimony would seem to have reference to the settlement of John's share in the personalty, for the debt secured by the recognizance was James's individual debt to John; what Joseph had loaned to or paid for John could not be considered in the adjustment of the recognizance; that was involved in the administration; "one would balance the other" only in the settlement with James's administrator. Although the administrator's account filed purported to be the final account, the testimony may readily be taken in the sense that James thought it had not been " fairly settled; " " he had a heap of trouble about it and if he was to drop off he didn't hardly know how his business would be settled up."

The testimony is vague, uncertain, and equivocal in meaning. It is not in our opinion of that satisfactory and convincing character which would justify its submission to the jury in rebuttal of the presumption of payment which the law raises when a debt of record is unclaimed and without recognition for a period of twenty-one years and three months. The fact that John Gregory resided in the state of Indiana is worthy of consideration on the general question, but standing alone does not explain this great delay. Absence in a foreign country, outside of the United States, would be a fact of more significance; but whether even that would be sufficient to repel the presumption would depend, perhaps, upon the facts and circumstances of the case.

The rule of law invoked by the defendants is a salutary and useful one, especially in cases where the action is delayed not only beyond the period of twenty years but until after the debtor's death. In England, by the statute of 3 and 4 Will. IV. c. 42, section 3, and in New York under the Revised Statutes, and perhaps in other states, this period of twenty years has been established as a limitation to actions upon debts of record, by specialty, etc., and we think it wise, in the absence of any such statute, that the force of this presumption shall not be defeated, excepting where the evidence to that effect is of a satisfactory and convincing character.

The judgment is reversed.