Pryor *versus* Wood *et al.*

The assignment of a mortgage, duly executed and recorded, passes the legal title, and no suit can subsequently be maintained thereon, in the name of the assignor, for the use of parties claiming an equitable interest in the mortgage debt.

The *bonâ fide* purchaser of a mortgage for a valuable consideration, takes it discharged of all secret equities, of which he had no notice.

After the lapse of twenty years, the acknowledgment, in the assignment, of the payment of the consideration, is sufficient evidence of the payment of the purchase-money.

ERROR to the District Court of *Philadelphia.*

This was an action of *scire facias* on a mortgage, brought in the name of Richard Pryor, who survived Priscilla Pryor, for the use of Joseph C. Budd and others, the heirs of Joseph Budd, deceased, against Joseph Wood and Thomas S. Wood, surviving administrators of Joseph Wood, deceased, and Lloyd Wharton Bickley and others, terre tenants.

Joseph Budd, under whom all the parties claimed, died in 1807, leaving a small estate, including the premises described in the mortgage on which the suit was brought. His widow and administratrix, Priscilla, soon after married Richard Pryor, the legal plaintiff, on whom the administration thus devolved.

In 1810, proceedings were instituted in the Orphans' Court, for a partition of the real estate of the decedent. The latter had left eight children, of whom two were of age, and John Conard was guardian of the other six; these were duly made parties to the proceedings. On the 19th October 1810, an order was made for the sale of the premises in question, and of another property, by the administrators, on the following terms:—" one-third of the purchase-money to be paid in cash, one-third in one year from the day of sale, and the remaining third in two years from the day of sale, with interest on both the said sums, to be secured by bonds and mortgages on the premises respectively."

On the 16th November 1810, the administrators, Richard Pryor and Priscilla his wife, made return to the court, in the usual form, that they had sold the premises in question to Dr. Benjamin Say for $9000. This sale was confirmed, and a deed executed to the purchaser.

Instead of complying literally with the terms of sale, as to the purchase-money, $3000 was paid in cash, and the remainder was secured by three bonds to Richard Pryor as administrator; two of them were for $1783.33 each, payable in one and two years, for the sole use and benefit of the heirs of Joseph Budd; and the remaining bond was conditioned for the payment of the interest

on $2433.33 to Priscilla Pryor, "it being the said Priscilla's thirds, or right of dower," in the premises, and of the principal, to and for the sole use and benefit of the heirs of Joseph Budd, at her decease.

To secure these bonds, a mortgage was given by Dr. Say, the purchaser, to Richard Pryor as administrator of the estate of Joseph Budd, deceased. Dr. Say subsequently conveyed the mortgaged premises to Richard Pryor in his individual capacity; and, on the 20th January 1816, Richard Pryor and wife, for the consideration of $10,500, granted and conveyed the premises to Joseph Wood, the defendants' intestate.

On the same day, Joseph Wood executed to Richard Pryor and Priscilla, his wife, a bond and mortgage (the latter being that on which the present suit was brought), conditioned for the payment unto Richard Pryor and Priscilla Pryor his wife, their executors, administrators, or assigns, of the just sum of $2433.33, on the day of the decease of the said Priscilla Pryor, with lawful interest, to be paid half-yearly. And on the 24th February 1816, John Conard, the guardian of Joseph Budd's minor children, entered satisfaction on the former mortgage given by Dr. Say.

The mortgaged premises, by mesne conveyances, under Joseph Wood, the mortgagor, on the 4th April 1836, became vested in Robert S. Bickley; who devised them to Isaac Bickley, from whom the present terre tenants deduced their title.

In 1816, an administration account was filed by Richard Pryor and wife, which was referred to auditors, who reported a balance of $959.88 due the administrators. This report was confirmed on the 19th June 1818. When this account was before the auditors, on the 21st March 1817, Richard Pryor, on behalf of himself and wife, administrator, &c., presented a petition to the Orphans' Court, setting forth that they were desirous of settling their accounts "with the several children and heirs of the said Joseph Budd," and praying a reference of those accounts to auditors. The same auditors were appointed, who reported a balance due from the children and guardian of $9177.45. This report was also confirmed on the 19th June 1818.

On the 13th February 1818, Richard Wood and wife assigned the mortgage in question to Julian Plum. On the 2d December 1842, the executor of Julian Plum, then deceased, assigned it to Jacob Snyder, Jr.; who, on the 12th December 1842, assigned it to Isaac Bickley, the devisee of Robert S. Bickley, then the owner of the equity of redemption.

The defendants claimed that by this assignment, the mortgage had merged and become extinguished, and that they were bonâ fide purchasers thereof for a valuable consideration. The plaintiffs, on the contrary, claimed that it was but a substitute for the original dower mortgage; that they were entitled to the princi-

[Pryor *v.* Wood *et al.*]

pal of it at the death of Priscilla Pryor, which took place in 1844; that the defendants had notice of their equity; and that there was no proof of the payment of a valuable consideration.

The contract for the sale of the mortgaged premises from Richard Pryor to Joseph Wood, was produced at the trial, wherein it was expressly stipulated that the widow's dower, $2433.33, should remain upon the premises; and there was evidence that, at the time Isaac Bickley purchased the mortgage, he said he had bought off "that dower mortgage." The court below admitted in evidence the several assignments of the mortgage, without requiring extraneous proof of payment of the purchase-money; to which the plaintiffs excepted. The learned judge then charged the jury that, "as a matter of law, their verdict must be for the defendants."

There was, accordingly, a verdict and judgment for the defendants, whereupon the plaintiffs removed the cause to this court, and here assigned for error: 1. The admission of the assignments in evidence, without proof of payment of the consideration-money. 2. The charge to the jury, that they must find for the defendants, as a matter of law.

*Sharpless,* for the plaintiffs in error.—There can be no doubt that the mortgage sued upon was, in its inception, really intended for what the plaintiffs in error claimed it to be. Priscilla Pryor was entitled to a dower in this property. No release of that dower was pretended; the mortgage given by Dr. Say fixes its amount at $2433.33; and the contract of sale with Wood shows that, notwithstanding the satisfaction of the first mortgage, the dower was still to remain upon the property. The only question, therefore, is whether the defendants have proved themselves entitled to protection as *bonâ fide* purchasers for value.

To hold that mortgage against those who had been defrauded of it, the purchaser must be clearly able to show that he purchased, without knowledge or means of knowledge of the equities of the claimants, and also the actual payment of the purchase-money: Lewis *v.* Bradford, 10 *Watts* 82; Bellas *v.* McCarty, 10 *Watts* 29; Knouff *v.* Thompson, 4 *Harris* 364. And the receipt upon the assignment is not sufficient evidence of payment as against third parties; the burden of proof is on the terre tenants: Union Canal Co. *v.* Young, 1 *Wh.* 432; Bolton *v.* Johns, 5 *Barr* 151. In the present case, the records contained abundant evidence of the equity of the heirs of Joseph Budd, which should have put any purchaser upon inquiry.

*H. Wharton* and *E. K. Price,* for the defendants in error.— The plaintiffs never had any claim against the defendants in error, or those whom they represent, with respect to the transactions of

[Pryor v. Wood et al.]

which they complain. The mortgage was given directly to Pryor and wife, and was so drawn that, by the assignment to Julian Plum, a perfect title passed, if she were a *bonâ fide* purchaser. If there was fraud in the transaction, the plaintiffs must establish it by evidence. But, in point of fact, Budd's heirs never had any equitable right in this mortgage. Prior to the Acts of 1828 and 1834, there was no statutory provision which required the retention of the widow's dower on the land, on sales in partition. The whole matter was under the control of the Orphans' Court. In the present case, no provision was made for securing Mrs. Pryor's dower interest, and she joined in the deed to the purchaser, without any reservation of her rights. This would estop her: Smith v. Warder, 7 *Harris* 430. The securities, so far as they constituted any distinct lien, did so alone by virtue of the mortgage from Say to Pryor. That mortgage was satisfied, with the concurrence of the guardian, and if there were fraud in it, the administrator and guardian were alone liable to the heirs, not subsequent purchasers.

But, be this as it may, the assignment to Julian Plum passed a title clear of any trust: Yohe v. Barnet, 1 *Binn.* 365; 3 *Sugd. on Vend.* 176; *Hill on Trustees* 166; McLeod v. Drummond, 17 *Ves.* 169; 1 *Story's Eq.* § 580; Petrie v. Clark, 11 *S. & R.* 385; Magniac v. Thompson, 7 *Pet.* 393; Trotter v. Shippen, 2 *Barr* 358; *Story on Sales*, § 200; Root v. French, 13 *Wend.* 570; Stevenson v. Newnham, 13 *Com. B.* 285, 303; 1 *Smith's Lead. Cases* 489.

If the plaintiffs ever had any claim with respect to this mortgage, it is barred by lapse of time, or the statute of limitations. In cases of constructive trust, equity follows the analogy of the statute of limitations: Atty. Gen. v. Fishmongers' Co. 5 *Myl. & Cr.* 16; *Story's Eq.* § 1520; *Hill on Trustees*, 168, 255-7; Kane v. Bloodgood, 7 *Johns. Ch.* 110; *Angell on Lim.* 174; Lockey v. Lockey, *Prec. Ch.* 518; South Sea Co. v. Wymondsell, 3 *P. Wms.* 143; Finney v. Cochran, 1 *W. & S.* 112; Bones's Appeal, 3 *Casey* 492; Todd's Appeal, 12 *Harris* 431. And equity interposes a bar in cases where the statute does not strictly apply, on the mere ground of staleness and acquiescence: Meanor v. Hamilton, 2 *Casey* 142; Commonwealth v. Shuman's Administrators, 6 *Harris* 346; Strimpfler v. Roberts, *Id.* 283.

If the plaintiffs had any such claim, they cannot enforce it as against the defendants, who stand as purchasers without notice: Davis v. Barr, 9 *S. & R.* 137; Hughes v. Large, 2 *Barr* 103; Mott v. Clark, 9 *Id.* 403; Taylor v. Gitt, 10 *Id.* 431; McConnell v. Wenrich, 4 *Harris* 365. In this state, the assignee of a mortgage takes the legal title by force of the Act of 1715; and against the legal title a court of equity will not interfere, unless the conscience of the holder is affected.

It is alleged that we are not *bonâ fide* purchasers, because we

[Pryor *v.* Wood *et al.*]

have given no extraneous proof of payment of the purchase-money, and for this are cited Union Canal Co. *v.* Young, 1 *Wh.* 432, and Bolton *v.* Johns, 5 *Barr* 151. But these cases differ from the present in these important particulars, that in both of them the transactions were very recent; the defendants were alive, and were the only persons who professed to be purchasers.

But the plaintiffs attempted to prove actual or constructive notice to Isaac Bickley, conceding him to be a purchaser. To this it may be answered, that a purchaser without notice from a purchaser with notice, and a purchaser with notice from a purchaser without notice, are both protected in equity : 2 *Lead. Cases in Equity* 1; *Hill on Trustees* 165, 519; Mott *v.* Clark, 9 *Barr* 404. As no notice to the preceding assignees was shown, we are protected, even if Bickley had notice.

But was there notice, actual or constructive? As to actual notice, see *Hill on Trustees* 515; Scott *v.* Gallagher, 14 *S. & R.* 334; Boggs *v.* Varner, 6 *W. & S.* 469; Knouff *v.* Thompson, 4 *Harris* 357. The notice attempted to be proved falls short of the rule there stated : Kerns *v.* Swope, 2 *Watts* 78; Miller *v.* Cresson, 5 *W. & S.* 284; Jackson *v.* Van Valkenburgh, 8 *Cow.* 260; Woods *v.* Farmere, 7 *Watts* 385; Randall *v.* Silverthorn, 4 *Barr* 177.

Was there constructive notice? The present doctrine in equity is, that constructive notice is not to be extended further than it has already been carried : Ware *v.* Ld. Egmont, 23 *Eng. L. & Eq.* 489; Greenslade *v.* Dare, 24 *Law Journ. Ch.* 490. A purchaser is not presumed to know anything on record which is not in the course of his title : Woods *v.* Farmere, 7 *Watts* 335. A final decree puts an end to notice by *lis pendens* : *Hill on Trustees* 511; 2 *Lead Cas. Eq.* 158; Bellamy *v.* Sabine, 3 *Jurist, N. S.* 943. Hence there was no competent evidence of notice, and the judge was right in taking the question from the jury : Moore *v.* Small, 7 *Harris* 461.

Even if the plaintiffs have any right, they are pursuing it through a wrong form of proceeding. Richard Pryor has no standing here as a legal plaintiff; his assignment passed the legal title to Joseph Wood. It was never heard before, that where a trustee conveys the legal title in breach of trust, but by a valid deed, a court of equity will give redress by declaring, contrary to the truth of the case, that the legal title has not passed from him; on the contrary, in such case the court permits full effect to be given to the legal title, and gives redress by declaring the actual holder of the legal title to be a trustee for the parties equitably entitled.

The opinion of the court was delivered by

STRONG, J.—The mortgage upon which this suit was brought

is dated January 29th 1816, and was given to Richard Pryor and Priscilla his wife. The debt secured by it was payable on the day of the decease of the said Priscilla. On the 13th day of February 1818, Pryor and wife assigned the mortgage to Julian Plum. The assignment purported to be for a valuable consideration therein mentioned, and was duly acknowledged and recorded. Subsequently, on the 2d day of December, A. D. 1842, the personal representative of Julian Plum assigned the mortgage to Jacob Snider, Jr., who, upon the 12th of the same month, assigned it to Isaac Bickley. The right thus acquired by Bickley subsequently became vested in the terre tenants defendants. All the assignments purport to have been for a valuable consideration stated therein, and all were duly executed, proved, and recorded.

After the lapse of nearly forty years from the time of the first assignment, the children of Mrs. Pryor (who had previously to her marriage with Richard Pryor been the wife of Joseph Budd) assert that they are the equitable owners of the mortgage; and, notwithstanding the assignments, bring suit upon it in the name of Richard Pryor, the mortgagee, who survived their mother.

It is impossible for the action to be maintained. Whatever may have been the effect of the assignment to Julian Plum, upon the equitable ownership of the mortgage, it is clear that it divested the legal right of Richard Pryor and wife, and that no *scire facias* could afterwards be sued out in their names, or in the name of the survivor. The legal title cannot exist at the same time, both in the assignor and assignee. Under our Act of Assembly, it was competent for the assignee to sue in his own name, and consequently no legal title of the assignors longer existed of which the *cestuis que use* could avail themselves.

But were this not the law, the equity of the children of Mrs. Pryor, if any equity existed, was a secret one. It was not expressed in the mortgage. There was nothing upon the face of that instrument, to notify a purchaser that any other persons than Pryor and wife, the mortgagees, had an interest in it. Nor was there on the 13th day of February 1818, when Julian Plum bought, anything upon the record in the line of his title or elsewhere, that should have led him to suppose that the creditor was other than the mortgage itself disclosed, or that should have put him upon inquiry. On the contrary, the satisfaction of the earlier mortgage by the guardian of the children, who was also assignee of it; the facts that the second mortgage was given not to the assignee of the first, that it was drawn in different terms and not for the use of the heirs of Joseph Budd, and that the administration and guardian accounts, settled before Plum's purchase, showed a large balance due to Pryor and wife, might well have justified the purchaser in believing that the mortgagees were equitable as well as legal owners of the mortgage.

[*Pryor v.* Wood *et al.*]

Plum must therefore be regarded as having been a purchaser without notice of any equity outstanding against the mortgagees from whom he bought. If, then, he was a purchaser for a valuable consideration actually paid, neither he, nor any one subsequently claiming under him, can be affected by any claim to the mortgage preferred by the heirs of Joseph Budd.

The assignment to him acknowledges the payment of the pecuniary consideration. It is argued, however, that it is not evidence for such a purpose, and that direct proof of payment must be made by another medium than the receipt in the deed. The doctrine that to establish a *bonâ fide* purchase for a valuable consideration without notice, against a prior fraud or a secret trust, the receipt in a deed is no evidence of payment, has been carried very far in this state. We are not disposed to extend it. Indeed, until the existence of a latent trust or anterior fraud has first been shown, the receipt is sufficient to establish a transfer of the use to the vendee, and is evidence for all purposes against the grantor who signed it. If it be said that, as against a stranger who claims in opposition to the deed, the receipt is a mere *ex parte* declaration not under oath, and not guarded by cross-examination, the same may be said of the deed itself. The receipt, as much as the words of grant and those of description, or the *habendum* and *tenendum*, is a part of the *res gestæ*, a part of the transaction of purchase; and if the latter are evidence, it is difficult to see why the former should have no importance attached to it. Purchase for a valuable consideration paid, is an equitable defence; and, in equity, is sufficiently maintained by a defendant's answer under oath, unless that oath is overbalanced by positive evidence upon the other side. But when this plea is introduced into a suit at law, as it often is in this state, he who asserts it is deprived of the protection which his oath would give him in equity, where the plea properly belongs. Yet, it is undoubtedly true, that, where a party claims under a deed from a fraudulent grantor, or from a trustee in whom there is a secret trust, he must not only have been without notice of the fraud or trust, but must have paid an adequate valuable consideration; and he cannot rely upon the receipt in his deed alone, for proof of the payment of the purchase-money. But is this doctrine without any limitation? Does this necessity to adduce evidence beyond his deed continue for ever? When forty years of enjoyment under his deed have passed away, must he still produce in court living witnesses to prove an actual payment of the consideration which the grantor, against his own interest, acknowledged he had received? If so, then his condition is worse than if he held by *mere livery of seisin*, without a parchment. Then, secret trusts and frauds are immortal, and honest rights die with the first generation. Such is not the law.

There must be limits, beyond which a grantee may not be com-

[Pryor v. Wood et al.]

pelled to prove by evidence *aliunde*, that the receipt in his deed tells the truth, that the purchase-money was paid. A deed proves itself after thirty years, if possession has accompanied it. A resulting trust is presumed to have been extinguished after twenty-one years, if nothing has been done to keep it alive. After twenty-one years' enjoyment of a way, a grant is presumed; and after a lapse of twenty years, in the absence of evidence to the contrary, the law presumes that a bond, a recognisance, and even a judgment has been paid. Surely after twenty years, it may with equal propriety be held, in aid of the receipt of a grantor, that the purchase-money has been paid.

As already noticed, the assignment of the mortgage to Julian Plum was on the 13th of February 1818. More than thirty-eight years elapsed before this suit was brought, and before that assignment was assailed. Those claiming under it are not, at this late day, under obligation to furnish any other evidence of the actual payment of the purchase-money than the receipt affords.

We forbear to notice particularly the effect of the subsequent assignments to Jacob Snider, Jr., and to Isaac Bickley. It is unnecessary. From what has already been said, it will be seen that the plaintiffs cannot recover.

Judgment affirmed.