# APPEAL OF A. N. BRENEMAN, EXR., ET AL. [ESTATE OF A. N. BRENEMAN, SR.]

FROM THE DECREE OF THE ORPHANS' COURT OF LANCASTER COUNTY.

Argued May 16, 1888—Decided October 1, 1888.

1. It is an established rule, at law and in equity, in the Common Pleas and in the Orphans' Court, that all debts by specialty, unclaimed and unrecognized for twenty years, in the absence of explanatory evidence, are presumed to have been paid: See Gregory v. Commonwealth, and Porter v. Nelson, preceding; Runner's Appeal, following.
2. In the present case, in the distribution of a decedent's estate in May, 1887, the letters of the decedent written in May, 1868, as to a judgment indebtedness unsatisfied of record from 1860, held. to contain an acknowledgment of the existence of the indebtedness sufficient to repel the presumption of payment.
3. That a guardian should account for and pay over to his wards an uncollectible debt, represented in the note or judgment of an insolvent debtor, is not such a voluntary payment as will discharge the debtor when subsequently able to pay.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK and WILLIAMS, JJ.; TRUNKEY, J., absent.

No. 162 January Term 1888, Sup. Ct.; court below, No. O. C.

On March 21, 1887, the account of A. N. Breneman, Jr., executor of the last will and testament of A. N. Breneman, Sr., deceased, was confirmed, showing a balance for distribution of $10,000, and on April 9th, *Mr. William Leaman* was appointed auditor to report a distribution of this balance among those legally entitled thereto.

By the report of the auditor, filed September 3, 1887, the following facts appeared :

On January 17, 1848, E. C. Reigart was appointed guardian of the persons and estates of five minor children of Abraham Breneman, deceased, and among the assets which reached his hands, as guardian, was the note of A. N. Breneman, now deceased, to said Abraham Breneman, dated April 1, 1847, for $400. The guardian held the note, and received interest upon it from the maker till April 1, 1859.

' On April 12, 1860, A. N. Breneman delivered to Mr. Reigart a new note for $424, in lieu of the former and interest thereon, payable to him as guardian of the minor children of Abraham Breneman, deceased, and containing a warrant of attorney, by virtue of which a judgment was entered upon the note the next day. On February 16, 1861, Mr. Reigart exhibited in the register's office his account as guardian, in which he charged himself with $400, the amount of the original note, and interest thereon from April 1, 1849, to April 1, 1861. This account was duly confirmed, and the balance shown thereby against the guardian was afterwards paid out in full and releases taken from the distributees.

A. N. Breneman became insolvent in 1859, and so continued until 1870.

On September 28, 1865, a scire facias was issued on the judgment entered in 1860, and on November 27th, judgment of revival was entered and the sum due liquidated at $566.75, in favor of " E. C. Reigart, guardian of the minor children of Abraham Breneman, deceased," against A. N. Breneman.

During the month of May, 1868, certain letters passed between Mr. Reigart and A. N. Breneman, in which correspondence the latter admitted the existence of said indebtedness at that date. The nature of this correspondence appears in the Opinion of the Court. Mr. Reigart died on December 20, 1869, and on the 27th of the same month letters testamentary

upon his will were issued to H. E. Slaymaker and Benjamin Champneys, Jr., appointed therein his executors. The note was found among Mr. Reigart's papers, but it was inventoried as of no value.

A. N. Breneman died on December 31, 1883, testate, and letters testamentary were issued to A. N. Breneman, Jr. No inventory of his personal estate was filed. The indebtedness represented by the Reigart judgment remaining unpaid, the executors of E. C. Reigart claimed payment thereof out of the fund for distribution. The hearing was had in May, 1887.

The accountant, with the heirs and legatees of A. N. Breneman, deceased, resisted payment of the judgment on two grounds:

1. That, more than twenty years having elapsed since the execution of the judgment note of April 12, 1860, proved and put in evidence, and also since the revival of the judgment on November 27, 1865, the indebtedness is presumed to have been paid.

2. That when E. C. Reigart charged himself in his guardian account, on February 16, 1861, with the amount of the note of April 1, 1847, and the interest thereon, he made a voluntary payment of the debt of another, and therefore no recovery could be had against the estate of A. N. Breneman, deceased.

The auditor held, first, that the judgment of revival of November 27, 1865, could not be questioned before him, no attempt to do so was made, and the indebtedness at that date was thus absolutely fixed; that the contents of the letters between the parties to the judgment, in May, 1868, show that the claim was then unpaid, and the latter date being within twenty years, the presumption of payment was repelled: and, second, that the guardian had properly charged himself with the amount of the note,—at all events, when the account was confirmed, and the balance shown thereby paid out to the distributees, the payment was not voluntary, but was made under a decree of the Orphans' Court; that, moreover, the executors of E. C. Reigart were the proper parties to demand and receive payment of the claim, notwithstanding the lapse of time: Slaymaker v. Farmers N. Bank, 103 Pa. 616. The claimants were awarded by the auditor the sum of $1,306.25, and a distribution ordered accordingly.

To the allowance of this claim, the executor and legatees of the deceased filed exceptions, which, upon argument, were dismissed by the court, PATTERSON, J., and the auditor's report and distribution confirmed. The exceptants then took this appeal and assigned as error the decree confirming the report and the distribution recommended by the auditor.

*Mr. H. M. Houser* and *Mr. A. C. Reinœhl,* for the appellants:

1. The circumstances of this case do not come within the decision in regard to the presumption of payment, and the evidence necessary to rebut the presumption. In 1861, Breneman was insolvent and no process of law could have enforced payment. Reigart voluntarily charged himself with the amount, knowing the claim was worthless, and paid it out to his wards. Breneman then owed the wards nothing.

2. Where one volunteers to pay the debt of another, the latter is under no obligations to reimburse him: Wheatfield Tp. v. Brush Valley Tp., 25 Pa. 113; Hehn v. Hehn, 23 Pa. 415; Natcher v. Natcher, 47 Pa. 496. In Montgomery's App., 92 Pa. 202, it was held that where administrators had voluntarily made payments without a refunding bond or an agreement to repay, repayment could not be enforced. A voluntary payment of money under a claim of right cannot in general be recovered back; there must be compulsion, actual, present, and potential: Peebles v. Pittsburgh, 101 Pa. 304. All the circumstances of this case clearly show that it belongs to that class of stale claims against dead men's estates, which should always be regarded with grave suspicion: Peters's App., 106 Pa. 340.

*Mr. E. P. Brinton* and *Mr. D. McMullen,* for the appellees:

1. The presumption of payment, if any such arose, was shown by the evidence to have been successfully rebutted. There was a demand, and an acknowledgment of the existence of the indebtedness, within twenty years: Stout v. Levan, 3 Pa. 236; Eby v. Eby, 5 Pa. 437; Reed v. Reed, 46 Pa. 242; Bentley's App., 99 Pa. 504; James v. Jarrett, 17 Pa. 372. The insolvency of the debtor is a strong circumstance to rebut the presumption of payment: Van Loon v. Smith, 103 Pa. 242; Beale v. Kirk, 84 Pa. 416.

2. Reigart, the guardian, was the legal holder of the judgment note which he took in lieu of the original. Having taken no steps before the new note was taken, to secure the note he then held, he was bound to his wards. And when he settled with his wards and paid them their shares, it could in no sense be called a payment of the note of A. N. Breneman. It was merely an advance of the amount by the guardian to his wards, whereby he became entitled to the security in his own right, and equity would treat it as assigned: Kelchner v. Forney, 29 Pa. 47; Wills's App., 22 Pa. 330; McCormick v. Irwin, 35 Pa. 117; Bender v. George, 92 Pa. 39; Ackerman's App., 106 Pa. 1; Mosier's App., 56 Pa. 81.

OPINION, MR. JUSTICE CLARK:

It is a well established rule of the law that all debts by specialty, etc., unclaimed and unrecognized for twenty years, in the absence of sufficient explanatory evidence, are presumed to have been paid. The rule extends to judgments: Van Loon v. Smith, 103 Pa. 238; Biddle v. Girard N. Bank, 109 Pa. 349, and to debts of all descriptions not barred by the statute of limitations; McQuesney v. Hiester, 33 Pa. 435; Lash v. Von Neida, 109 Pa. 207; Pryor v. Wood, 31 Pa. 142. It is applicable both at law and in equity, in the Common Pleas, and in the Orphans' Court.

The appellants invoke its aid in the distribution of the estate of Abraham N. Breneman, deceased. The facts do not seem to be seriously disputed, and are substantially as follows: On the 1 April, 1847, Abraham N. Breneman gave his note to Abraham Breneman, Sr., for $400. Abraham Breneman, Sr., died in 1848. E. C. Reigart was in the same year appointed guardian of his minor children, and this note passed into his hands among the assets turned over to him for his wards. Abraham N. Breneman paid the interest upon the note until April, 1860, when he gave a judgment to Reigart, guardian, etc., for $424. About this time Abraham became insolvent, and remained insolvent for at least ten years; he never afterwards engaged in business in his own name. On the 16 February, 1861, Reigart filed his guardianship accounts, charging himself, inter alia, with the note and interest from the time it came into his hands, and afterwards paid to his wards the sev-

eral balances in his hands, as appeared by his accounts, taking releases from them in the usual form. On the 27 November, 1865, Reigart on a scire facias to revive, entered a judgment in default of an appearance for $556.75. Reigart died in 1869; the judgment was embraced in the appraisement of his personal estate, but was marked "no value." Abraham N. Breneman died in 1883, the executors of his last will and testament filed their account in March, 1887, and this contest arises upon the distribution of his estate.

It is plain that the judgment was unpaid on the 27 November, 1865, when the judgment of revival was entered upon it; although served with a scire facias, Breneman failed to appear, and judgment was entered by default. Breneman was at this time admittedly insolvent, and continued to be so at least until 1870; he assumed to be acting as agent for some one, but the testimony does not disclose for whom he was agent if he was agent for any one. On the 21 May, 1868, Breneman wrote a letter in reply to one written by Reigart, in which he admits that in 1859 he became "perfectly bankrupt," and that a number of his creditors, among them Abraham Breneman's estate, were left unpaid. He further states that as Reigart was in no way responsible for the original investment, he should not have charged himself with it in his guardianship accounts, and if he did so, he did not act with that shrewdness and care for which he was so well known; he says: "It would seem inexplicable to my sensible mind that you would charge yourself with a note that was considered worthless." On the 22 May, Mr. Reigart replied that relying on Breneman's emphatic statement in 1861, that he had arranged for payment of the note, he had charged himself in his account not only with the principal but the interest also. "A few years since" (in 1865), "I called on you," says Mr. Reigart in his letter, "to redeem your promise; you then told me that you were not able to pay it, etc. You were aware it was then too late to correct this charge against myself of the $440 and interest. Under these circumstances, being misled by your promise, I only ask you to deal fairly by me." On the 23 May, Breneman again wrote to Reigart, referring to the conversation of 1865; he says: "I then expressed my total inability to make any arrangement for the payment of the note, although you pro-

posed various easy terms; and the result of our conference was, that you insisted on renewing the judgment, as you considered it your duty to the heirs, although I most strenuously opposed it. Now, on reflection, you must be aware that from the time of my failure up to that time, we had not spoken on the subject, and well knowing my condition, you must certainly have taken credit for that note. And from that time until now the subject was never again broached. If you have really paid the money over, as you state you have, then it was not done according to your usual cautious mode of financing, as no man would be likely to pay over money which he had not received." In view of the explicit admissions contained in this correspondence, it is also clear, that this judgment was not paid on the 23 May, 1868; not only so, the debt distinctly identified was on that day claimed by Reigart, on the one hand, and unequivocally recognized in writing by Breneman, over his own signature, on the other. Reigart died 20 December, 1869; the debt was inventoried in his estate as of no value, and his executors testified that it never was paid to either of them. Precisely when the period of Breneman's insolvency ended does not appear; he was insolvent from 1860 to 1870. The judgment was presented to the auditor for allowance on the 10 May, 1887, a period of less than nineteen years from the date of the recognition of the debt by the debtor. The presumption that the judgment of 1865 had been paid is by force of this evidence plainly repelled, and the auditor was right on this branch of the case.

But the appellants further contend that Reigart was not bound to the heirs of Abraham Breneman, deceased, to the amount of this note; that he voluntarily charged himself with the note knowing it to be worthless, and that the payment to the heirs was therefore a voluntary payment. This is wholly without merit. In the first place, we cannot say that Reigart was not bound to his wards for the amount of this note; the money secured by the note belonged to them; it was his duty to have the debt properly secured and to collect it if it were collectible. Breneman's insolvency began in 1859 or 1860; the evidence does not show that the debt was bad prior to that time; it does show that he held the note from 1848 until about the time of Breneman's insolvency in 1860, without any

effort to collect, without judgment, and without security. In this condition of the proofs, he would undoubtedly be bound to make good the loss to his wards, who might insist upon his charging himself therewith in his account. But in the second place, if the payment was a voluntary one, in the sense suggested, that did not relieve Breneman from the absolute obligation he was under to Reigart. When Reigart paid the debt, which it is said he was not bound to pay, it may have been a voluntary payment to his wards. He took the chances of reimbursement from the proceeds of the note; if he failed, he could not recover it back from his wards: Montgomery's Appeal, 92 Pa. 202. When one volunteers to pay a debt for another, the latter is under no obligations to reimburse it: North Wheatfield Tp. v. Brush Valley Tp., 25 Pa. 112; Hehn v. Hehn, 23 Pa. 415. It was not the debt of Breneman which Reigart paid to his wards; it was his own debt, and after that debt was discharged, Breneman's debt remained precisely as before, excepting that it was taken out of the trust under which Reigart held it. It became his own; the money was due and owing to Reigart in his own right, and for his own use, and not for the use of his wards. The obligation of Breneman on his bond was absolute; whether the payment by Reigart to his wards was voluntary or involuntary did not concern him; he was bound to pay in any event.

Upon an examination of the whole case we find no error and therefore

> The decree of the Orphans' Court is affirmed, and the appeal dismissed at the cost of the appellants.