## McNair, Admin'r, to use, etc., v. Manuel and Spiro.

*Lease—Assignment—Breaches of covenants—Act of 32 Henry VIII, ch. 34.*

1. Where suit on account of breaches of covenants in a lease is brought in the name of the lessor to the use of his assignees, only such breaches may be shown as were committed before the assignment.

2. The fact that by the Act of 32 Henry VIII, ch. 34, the assignees might have brought suit in their own names, and could thereupon enjoy the same benefits and remedies which their lessors or grantors had or enjoyed, does not have the effect of allowing breaches committed after assignment to be shown in an action brought in the name of the lessor.

*Lease — Covenant against unlawful business — Occasional events — Crap games—Pool.*

3. An occasional crap game or an occasional game of pool, in which the participants were betting, would not amount to an unlawful business. To come within the term so as to constitute a breach of covenant against unlawful business on leased premises, crap games or gambling would have to be so frequent as to amount to a habit, or of sufficient frequency to put the defendants or their agents on notice.

Motion for new trial. C. P. Dauphin Co., March T., 1920, No. 158.

*Maurice R. Metzger,* for plaintiffs; *George Ross Hull,* for defendants.

HARGEST, P. J., Feb. 6, 1922. — In this case a judgment was originally entered Feb. 12, 1920, in an amicable action of ejectment on account of alleged breaches of a lease. The judgment was subsequently opened and the defendants let into a defence. The trial resulted in a verdict for the defendants, and a motion for a new trial was then made.

On the trial a lease was offered in evidence, originally made by H. V. McNair, administrator of the estate of Alvin McNair, deceased, to the defendants, for the premises in question. The lease was assigned to C. E. Witman, C. B. Witman and F. P. Witman on Jan. 2, 1920, for the unexpired term. This lease provided, in part, as follows: "No unlawful business shall at any time be carried on upon said premises. . . . In case of a breach or evasion or any attempt to break or evade any of the covenants or conditions of this agreement, the first party may forfeit and annul the unexpired portion of this lease and enter upon and repossess the said premises with or without process of law, and without giving any notice whatsoever."

1. On the trial we limited the plaintiff's proof to breaches occurring before the assignment Jan. 2, 1920, and excluded evidence of breaches committed after that date. This is now assigned as error. We are convinced that the ruling was correct. In the case of Stoddard *v.* Emery, 128 Pa. 436, the action was entitled "Truman M. Stoddard, for the use of Heman Janes, *v.* L. Emery, Jr." The lease in that case was assigned Jan. 7, 1878. The plaintiff was

McNair, Admin'r, to use, etc., v. Manuel and Spiro.

limited to proof of breaches before that date. The court below said (page 438): "The plaintiff is Mr. Stoddard, and if there is a recovery at all, it is upon his rights; . . . I cannot see how damages that accrued to Mr. Stoddard under this lease, up to the time he parted with his title, and damages that may have accrued to Mr. Janes afterwards, as one cause of action, can be brought together in one case. The recovery in law is Mr. Stoddard's. If it belongs to Mr. Janes, of course, it goes to his use. Now, the question is how Mr. Stoddard can recover after he parted with his title and ceased to have an interest in this. We are inclined to hold that Stoddard can recover what damages he sustained."

Of this ruling. the Supreme Court said (page 442): "If there were any breaches after the purchase of Janes, there would be no right of action in Stoddard, and there could be no recovery in an action brought in his name."

Unless a statute provides otherwise, the legal interest or title in and to a debt or contract which has been assigned remains in the assignor, and the action must be brought in his name: 3 Troubat & Haly's Practice, 2008-9. In some instances the statute law provides that the legal title shall follow the equitable title, and then the suit may be brought in the name of the assignee. It is so provided by the Act of May 28, 1715, 1 Sm. Laws, 90, as to bonds, specialties or notes for the payment of money; by the Act of March 14, 1873, P. L. 46, as to assignments of insurance policies; by the Act of April 23, 1829, 10 Sm. Laws, 455, as to judgment bonds, specialties and other contracts where the transferrer died before suit.

The Supreme Court held that the Act of May 28, 1715, 1 Sm. Laws, 90, authorized suit to be subsequently maintained in the name of the assignor where the assignment was duly executed and recorded (Pryor v. Wood, 31 Pa. 142), but unless the assignment was under seal, acknowledged and recorded, the suit was properly issued in the name of the holder of the legal title for the use of the assignee: Partridge v. Partridge, 38 Pa. 78. This latter case was decided in 1860. Subsequently the Act of April 22, 1863, P. L. 567, was passed, specifically relating to the assignment of mortgages, and providing that the assignee might sue either in his own name or in the name of the assignor. A covenant in a lease for the payment of rent is not assignable under the Act of May 28, 1715: Newbold v. Comfort, 2 Clark, 331.

The plaintiffs contend that under the Act of 32 Henry VIII, ch. 34, which is in force in Pennsylvania, they had the right in this case to prove breaches both before and after the assignment. That act provides that the grantees or assignees of lessors shall enjoy the same benefits and remedies which the lessors or grantors themselves had or enjoyed for the breach of any condition, covenant or agreement contained or expressed in leases or grants. In Newbold v. Comfort, 2 Clark, 331, it is held that "by the Statute of 32 Henry VIII, ch. 34, the assignee of the reversion may sue in his own name upon expressed covenants in a lease." If the use-plaintiffs in this case had that right, then they have not availed themselves of it, but chose to bring the suit in the name of the assignor. There is no question in this case as to whether the use of the name of the legal plaintiff is proper. The defendants are not objecting to it, but are asking the court to consider the case as the plaintiffs themselves have brought it: Saeger v. Runk, 148 Pa. 77.

2. It is contended that the court erred in "instructing the jury in effect that there could be no breach of the lease in question unless the breach was committed with the knowledge of the defendants or their agents." The vice of this reason is that it does not correctly state the charge of the court. The court did not charge that there could be no breach unless the breach was

1 D. & C.

committed with the knowledge of the defendants or their agents. In the general charge the court said:

"The defendants were bound to conduct a lawful place. By that we mean that they must operate a place with reasonable care. They could not hide behind the fact that they themselves did not know that anything unlawful was being done there if their agents knew it, and they could not hide behind the fact that their agents did not know it, unless the agents used reasonable care to ascertain it. If gambling was going on there, where the other people around the place could readily see it, those in charge could not shut their eyes to it and say they did not see it, if they could by the exercise of reasonable diligence have seen it; so, in ascertaining whether gambling was going on there, you will ascertain whether these defendants knew it, or their agents knew it, or by the exercise of reasonable diligence they could have known it. Even though they did not know it, if they could and should have known it by the exercise of reasonable diligence, they are chargeable with knowledge of it. . . .

"The putting up of signs, as you have heard, would not be sufficient to shield defendants; they could not get behind the fact that they put up signs to prevent boys under eighteen years of age from being in that place, or prohibit gambling, unless they did everything that was reasonably required to prevent those things. Now, did the defendants do what they ought to have done, and were the measures which they took effective to prevent either gambling or allowing children under eighteen years of age to be in this poolroom?"

The testimony in this case was that there was pool playing for money, and that punch-boards, which were gambling devices, were being operated by the defendants or their agents; that children under the age of eighteen years were permitted to be in the place from time to time. The jury were instructed that if that testimony was true, it was a violation of the lease. If the testimony was true that punch-boards were being operated and children under the age of eighteen years were frequenting the place, those things must have been known to the defendants or their agents. Punch-boards could not have been operated unless the defendants or their agents conducted the operation. Children could not have frequented the place without the knowledge of those in charge.

There was some further testimony that crap games were from time to time being conducted in the yard, but that was no part of the business that was being carried on. The provision of this lease is that "no unlawful business shall at any time be carried on upon the premises," and unless an unlawful business was carried on, it would not be the subject of a forfeiture. Forfeitures are odious in law, and the language of a covenant or condition upon which a forfeiture is claimed will not be extended to sustain such claim beyond what the language clearly implies. So, an occasional crap game or an occasional game of pool, in which the participants were betting, would not amount to an unlawful business. To come within this language the crap games or the gambling would have to be so frequent as to amount to a habit, or of sufficient frequency to put the defendants or their agents on notice, and if they were that frequent, it would be negligence for the defendants or their agents not to have known of them. We think there was no error in the charge.

3. The plaintiffs complain that the court erred in affirming defendants' third point, which is as follows: "If the jury find that the defendants instructed their managers, servants and employees to prevent the doing of

McNair, Admin'r, to use, etc., v. Manuel and Spiro.

unlawful things upon the premises, and those managers, servants and employees exercised reasonable care and diligence to prevent the doing of such unlawful things, the verdict must be for the defendants."

What we have already said applies to this point. The doing of occasional unlawful things would not amount to the carrying on of an unlawful business. If the defendants and their employees exercised reasonable diligence to prevent the doing of unlawful things, and, notwithstanding such reasonable diligence, an occasional unlawful thing, such as a crap game played for money, was carried on without the knowledge of the defendants or their agents, it would not be sufficient to sustain a forfeiture. If there were unlawful acts which by their frequency amounted to an unlawful business, that would be sufficient to sustain a forfeiture, even though the defendants or their employees did not in fact know of the existence of such acts. But it is inconceivable that such conduct in a place where the public were invited could be carried on in such a way as to amount to a business without the knowledge of the defendants or their agents.

For these reasons, the motion for a new trial is overruled and judgment directed to be entered upon the verdict in favor of the defendants upon the payment of the jury fee.

NOTE.—See McNair, to use, v. Manuel, 29 Dist. R. 1154.

From William Jenkins Wilcox, Harrisburg, Pa.